Foreman et als. vs. Hinchcliffe et als.

---

No. 13,790.

ALCEE FOREMAN ET ALS. VS. THOMAS HINCHCLIFFE ET ALS.

SYLLABUS.

It appears in this case that the tutor of the plaintiffs, having authority from a competent court, based on the advice of a family meeting, to sell the land in question, of which his wards were the owners, for cash, adjudicated the same to a third party, and recorded the *proces verbal* thereof, but, at the same time, took a counter-letter from the adjudicatee, showing that he made the purchase for the benefit of the minors and paid nothing. This counter-letter was not recorded; the adjudicatee died; and the land was assessed to his estate; sold for taxes, and purchased by the defendant, who acquired possession, paid taxes, subsequently assessed, and expended some money in improvements. Thereafter, the counter-letter mentioned was recorded, and, later still, this suit was brought, by and on behalf of the original owners, attacking the adjudication by their tutor, and also attacking the tax sale,

and claiming from the defendant, as a possessor in bad faith, the rents and revenues of the property from the beginning of his possession.

1. The adjudication by the tutor is held to be valid in so far as concerns the rights of the purchaser at the tax sale, who acquired without knowledge other than such as was disclosed by the proceedings in court and the public records. But as between the plaintiffs and the original adjudicatee, there having been no sale of the property, the plaintiffs are entitled to stand in the shoes of the latter, or his heirs, for the purposes of the attack upon the tax sale, with the same rights, no greater and no less, than such adjudicatee, or his heirs, would have had if he had purchased the property, in good faith for himself.

2. The notice to the delinquent tax-payer (in this case, the estate of the adjudicatee, which appeared upon the public records as the owner to whom the property had been assessed) not having been given as required by Article 210 of the Constitution of 1879 and Act 85 of 1888, under which law the sale was made, the sale of the property for taxes and the title thereunder are null. And the action to recover the property is not barred by the prescription of five years, under C. C. 3542, nor by the prescription of three years, under Act No. 105 of 1874.

3. The defendant was not a possessor in bad faith up to the judicial demand, and is liable for rents and revenues only from that date. He is entitled to recover the amount paid for the property, with the penalty of twenty *per cent.,* as in case of redemption, and with legal interest on said amount from the date of payment. And he is also entitled to recover taxes paid prior to the beginning of his possession, with like interest. But taxes paid during his possession are compensated by the revenues which he received and retained. He is also entitled to recover, for improvements, retained by the owners, to the extent of the enhanced value of the land, as admitted.

A PPEAL from the Eighteenth Judicial District, Parish of Acadia— *DeBaillon, J.*

*Philip Sidney Pugh* and *Thomas Rutland Smith,* for Plaintiffs, Appellants.

*Thomas H. Lewis* and *Hamden Story,* for Defendant, Appellee.

The opinion of the court was delivered by

MONROE, J. This is a petitory action brought on behalf of three minors, represented by their undertutor, and a fourth, who have been emancipated by marriage, appears in person for the recovery of 516.87 acres of land, situated in the Parish of Acadia, and valued at about $15,000, which the defendant, Hinchcliffe, acquired by purchase at tax sale.

The case, as presented by the record, is as follows, to-wit: The land in question was acquired by the plaintiffs December 23, 1889, as the

result of a partition, between them and their co-heirs, of the estate of their maternal grandfather. In March, 1890, their father, as natural tutor, presented a petition to the District Court, alleging that said property was unproductive, and that it was necessary that it should be sold in order to provide means for the support and education of the owners, and praying for the convocation of a family meeting to advise upon the subject. A family meeting was accordingly held, and it recommended that the tutor be authorized to sell the property at auction for cash, and the proceedings were approved by the undertutor and homologated by the court. Thereafter the tutor advertised the property, and, according to the recitals of the *proces verbal*, which is in evidence, upon May 3, 1890, adjudicated it to Joseph L. Stutes for $1596.02 cash, and said *proces verbal*, signed by the tutor, attested by the mark of the adjudicatee, and duly witnessed, was recorded May 7, 1890. Upon the day of the sale, however, the adjudicatee executed an instrument reading as follows, to-wit:

"This writing, made this 3rd day of May, 1890, witnesseth: That, " Whereas, at the public sale of the property of the minors Alcee, " Samuel, Emma and Nathan Foreman, made this day by Horace Fore- " man, natural tutor of said minors, I became the purchaser of all " the property (real estate) sold. Therefore be it known that all of said " property was not actually bought for my account, but for the benefit " of said minors, and I hereby agree to pass a deed of sale or other " conveyance of said property to whichever purchaser, or other con- " tractor, the said Horace Foreman shall find for the whole or part of " the same, and all the proceeds of said sale, conveyance, or other con- " tract, shall go into the hands of said Horace Foreman for the bene- " fit of said minors.                                    his

                    "(Attested)    JOSEPH L. X STUTES.

"Witnesses:                                              mark

    "P. J. CHAPPUIS.

    "EDWARD L. WELLS.

"This is to certify that I have not paid anything for the property described on the reverse side hereof.                    his

                    "(Attested)    JOSEPH L. X STUTES.

                                      mark

"(Signed)     P. J. CHAPPIUS."

This instrument was not recorded until July 29, 1897, but Stutes

did not, at the date of the adjudication or at any subsequent period, up to the date of his death, which occurred in April, 1891, attempt to take possession of the property or to disturb the possession of the minors and their tutor. After the death of Stutes the property was assessed for the taxes of 1891, in the name of the "Estate of Joseph L. Stutes," and in September, 1892, it was sold for said taxes, interest and costs, amounting to $19.15, to Thomas Hinchcliffe, one of the defendants. Within the year following this sale, as we think the evidence shows, though there is some attempt at denial by Hinchcliffe, the tutor called upon that gentleman for the purpose of redeeming the property, and was told that he could do so by paying $100, or in the alternative, that he would be paid $100 to let the matter stand as it was. He declined both propositions, and, applying to the sheriff for assistance, gave that official $50, with which to effect the redemption. The sheriff thereupon called on Hinchcliffe and told him that he had the money for the purpose mentioned, but did not, for some reason, not clearly explained, accomplish that purpose. He therefore returned the money to Foreman. It does not appear that either Foreman or the sheriff made an actual tender of the amount necessary to redeem the property, nor does it appear that Hinchcliffe was, at that time, informed of the existence of the counter letter from Stutes. Upon the other hand it does not appear that he objected to receiving the money, which Foreman and the sheriff were ready to pay him, on the ground that the former had no interest in the matter, and the conclusion that we reach is that he was disposed to hold on to what he naturally considered a profitable investment. Horace Foreman, the father and natural tutor of these plaintiffs, appears to have been lacking in both intelligence and decision of character, and without further effort to clear the title to the property in question, he voluntarily moved off of it in the autumn of 1893; and about that time the defendant, Hinchcliffe, sent a surveyor there to do some leveling and to find the corners, and, perhaps, went himself, after which, in 1895, he leased said property or part of it, and has since then, excercised other rights of ownership.

Such being the situation, the present suit was brought, upon January 31, 1899, as has been stated by three of the minors, Foreman, represented by their undertutor, and by the fourth, who has been emancipated by marriage, acting in his own behalf. The petitioners set up their title by inheritance and partition, and charge that the transaction, purporting to be a sale to Joseph L. Stutes, was a "fraudulent,

simulated and empty formality to cover the secret object and purposes"
of their tutor and the said Stutes; and that the subsequent assess-
ment of the property, in the name of the estate of said Stutes, was
illegal, and the sale thereunder null. And they further allege that
said tax sale was null and void for the further reasons:

1. That the least quantity of land necessary to pay the tax was not
sold or offered for sale by the sheriff.

2. That the constitutional and other requirements as to notice were
not complied with.

3. That the property was not sold for the full amount of the taxes
due, with interest and costs.

They allege that Hinchcliffe acquired the property with full knowl-
edge of all the facts, and is a possessor in bad faith, and that he owes
them rents and revenues to the amount of $1500 a year. And they
pray for citation of their tutor, of the heirs of Joseph L. Stutes, and
of said Hinchcliffe, and for judgment declaring the pretended sale to
Stutes to be fraudulent, simulated, null and void, and the tax sale to
said Hinchcliffe to be also null and void, recognizing them as owners
and restoring them to possession of the property, and condemning
Hinchcliffe for rents and revenues. The tutor and the heirs of Stutes
accepted service of the petition, but have not defended the suit. The
defendant, Hinchcliffe, by way of exception and on the merits, sets up
the following defense, to-wit:

1. That the sale to Stutes was made pursuant to the advice of a
family meeting, called for a legitimate purpose, and to a judgment
homologating the same; that the *proces verbal,* showing the title to
have passed to Stutes, was duly recorded, and that Stutes, having died,
the property was assessed to his estate, in which name it stood upon
the public records for the year 1891; that it was acquired by the
defendant at a sale made under such assessment, and that it is in-
competent to attack said judicial proceedings collaterally, or to call in
question the sufficiency of the tax title acquired upon the faith of those
proceedings and of said public records. And the defendant pleads the
prescription of five years, under C. C. 3542, and of three years, under
Act. No. 105 of 1874.

The tax title was made out upon a printed form, with blanks filled
up here and there, containing a number of general and sweeping asser-
tions of compliance with the law, and, among others, the following, to-
wit:

"The tax rolls for said State and parish taxes for the year 1891 having been deposited in the office of the tax collector of said parish for the collection of taxes, and a notice to each delinquent tax payer on said roll having been mailed to each of said delinquents after the second day of January, 1892, as directed by said Act No. 85, and after the expiration of twenty days, counting from the day on which the last of said notices was mailed or delivered, said property on which said taxes were due or delinquent, having been duly listed and advertised for sale at public auction, the necessary publication thereof having been made in the *Crowley Signal*, a weekly newspaper published in said parish, said advertisement having been made on the 13th day of August, 1892, and in each issue of said paper, each week, commencing with the issue of said date, 13th of August, 1892, and continuing up to and including the issue of September 13, 1892, that being the third Saturday in said month, and being the day on which said sale was advertised to take place at the door of the court house in the town of Crowley, La., in said parish, and all the formalities required by law, as specified in said Act, in reference to said notices, advertisements and sales having been complied with, and after more than thirty clear days' advertisement of said sale, as aforesaid, I did, after reading aloud said public advertisement, containing a list and description of the property and the name of the owner to whom assessed, showing taxes due thereon, each tract separately and terms of sale—offer for sale, at public auction, for cash, without appraisement, on said seventeenth day of September, 1892. within the hours prescribed by law for judicial sales, on said day, at the front door of the court house of said parish, said property being included in said advertisement, having been reached in its regular order, as advertised and described, as follows, to-wit:

"Four hundred and eighty-nine and 56-100 acres of land, and being the N. ½ and S. W. ½ of Section 32, Township 10, S. R. 1, W. Twenty-seven and 31-100 acres, lying and being in the Southern portion of Section 29, Township 10, R. 1, W.

"And the tax debtors not having pointed out any particular portion of said property to be offered for the taxes due on the whole of said property, and having received no bids for any portion of said property, I proceeded to offer the whole of said property, for the State and parish taxes, interest and costs, due by the Estate of Joseph L. Stutes, owner thereof, according to the assessment roll on file, when Thomas Hinchcliffe, residing in the town of Crowley, La., being the last and highest

bidder, the said property was adjudicated to the said Thomas Hinch-cliffe for the price and sum of nineteen and 15-100 dollars, which amount is equal to the sum of all taxes, interest and costs due upon said property, and which I acknowledge to have received, in cash, from said purchaser, in full satisfaction of the following taxes, interest and costs upon said property, to-wit:

| | |
|---|---:|
| State taxes 1891 | $6.30 |
| Parish taxes 1891 | 9.00 |
| Cost of advertisement and notice | 2.00 |
| Sheriff and ex-officio tax collector's fees | 1.50 |
| Recorder's fees | 1.25 |
| | |
| Total | $19.15" |

Notwithstanding the formal declaration to the contrary, as thus contained in the act, the evidence shows, as we think, conclusively, that the notice to the delinquent tax payer, as required by Article 210 of the Constitution of 1879, and by Act No. 85 of 1888, was not given, or mailed. Joseph L. Stutes, up to the moment of his death, lived in the Parish of Lafayette, adjoining the Parish of Acadia, and only nine or ten miles from the parish seat of the latter parish, and his family have continued to live there up to the present time within a half mile of Dusson, where they send to the postoffice nearly every day and receive their mail regularly, and did in 1891 and 1892. But his widow swears that she received no notice of the proposed sale of the property in question, and his father, who was, and is, a member of the family, living in the same house, swears that he never heard of such a notice being received. Moreover, the deputy sheriff, who had charge of the issuing of such notices in the Parish of Acadia, testifies that no such notice was sent, and both he and the then sheriff and ex officio tax collector testify that if any notice had been sent it would have been addressed to the "Estate of Joseph L. Stutes." And so, notwithstanding the recital of the deed, being part of the printed form which reads, "And having received no bids for any portion of said property sufficient to cover the taxes on the whole," it appears from the testimony of the tax collector that he did not offer the property otherwise than *in globo*. As to the amount for which the sale was made, it appears, from the face of the deed, that, by reason of an error in the addition,

it was made for one dollar less than the aggregate of the taxes, interest and costs which were due. We conclude this *resume* of the facts and pleadings in the case by saying that no actual fraud is shown to have been intended by the father of the plaintiffs, or by Joseph L. Stutes, in the matter of the adjudication of the property in question to the latter. The probability, as it seems to us, is that the arrangement was made in order to enable the tutor to sell the land to better advantage, since it is not unlikely that, at that time, such a body of land, sold at auction, would have brought little or nothing. This does not excuse the irregularity of the course adopted, which was *in fraudem legis,* but that is a different matter from an attempt to defraud the minors of their property, and we think that the father of the minors and his deceased co-conspirator are entitled to the benefit of the difference. We may further remark that there is no evidence in the record tending to show that the defendant, Hinchcliffe, knew, at the date of his purchase, of the existence of the counter letter, or that he had any reason to suspect that the title to the property was vested in anyone else than the "Estate of Joseph L. Stutes," which appeared upon the public records to be the owner.

OPINION.

The plaintiffs make no attack, collateral or otherwise, upon any order or decree of the District Court, and, as there is no proof that the adjudicatee at the tax sale was aware that the previous adjudication of the property to Stutes was a mere shadow, without substance, and, as between the parties thereto, conveyed nothing, he is entitled to the benefit of the presumption, arising from the proceedings, orders, and decrees, which led up to that adjudication, that Stutes became the lawful owner of the property, and that it belonged to his estate when it was offered for sale for taxes. And, hence, if the estate of Stutes could not recover in this case, neither can the plaintiffs, who, *quoad* the defendant, must take the position as they find it. Upon the other hand, it being shown that whatever rights the estate of Stutes appeared to possess in the property in question are, as between that estate and the plaintiffs, vested in the latter, it does not lie in the mouth of the defendant, Hinchcliffe, to object that the plaintiffs, and not the estate of Stutes, are asserting those rights.

As between the plaintiffs and the defendant, Hinchcliffe, we hold the sale to Stutes to have been a valid one, but as between plaintiffs

and Stutes and the heirs of Stutes, we hold it to have been no sale at all; since the counter letter declares that the nominal purchaser was not buying for his own account, "but for the benefit of the minors," who were already the owners of the property. The result is, that, for the purpose of the attack upon the tax title, the plaintiffs stand in the shoes of Stutes, with the rights, no greater and no less, that he, or his heirs, would have had, if he had purchased the property for his own account, and any defense, predicated upon rights acquired by the holder of the title whilst he was in ignorance of the existence of the counter letter, and which would be good as against Stutes or his heirs, would be good as against the plaintiffs.

We pass, then to the tax title, which the defendant admits that Stutes, or his heirs, would have had the right to attack, if he had been, as the defendant was authorized to presume that he was, the real owner of the property, and which right, we hold, upon the case as presented to be vested in the plaintiffs, who are the real owners.

The evidence shows, as we have stated, conclusively, that the notice of the proposed sale of the property for taxes as required by Article 210 of the Constitution of 1879, and by the act of the General Assembly, under which it purports to have been made (Act No. 85 of 1888) was not given to those who appeared upon the face of the records to be the owners and delinquents. It is true that the value of the testimony of the ex-deputy sheriff and collector is materially affected by the fact that it was shown that he had an interest in the result of the litigation, but that value was not entirely destroyed, and, being strongly corroborated by that of the other witnesses, including the sheriff and tax collector himself, we entertain no doubt as to its verity. The article of the Constitution required that the property should be advertised and sold, in the manner provided for judicial sales, and, quoting, "after giving notice to the delinquent in the manner to be provided by law (which shall not be by publication, except in the case of unknown owner)." The law, applicable to this case, providing the manner in which th's notice should be given is to be found in Sections 50 and 51 of Act 85 of 1888, and reads as follows, to-wit:

"Sec. 50. That on the second day of January, 1889, and each subsequent year, or as soon thereafter as possible, the tax collector or sheriff shall address to each tax payer who has not paid all the taxes which have been assessed to him on immovable property a written or printed notice that his taxes on immovable property must be paid

within twenty days after the service of (or) mailing of said notice, or that said property will be sold according to law," etc.

"Sec. 51. That the tax collector or sheriff shall either deliver to each tax payer, in person, or shall leave at his residence or place of business, in the Parish of Orleans, one of said notices; but, in the other parishes, he shall mail to him, by postal card, addressed to the postoffice of said tax payer one of said notices, as required in Section 50 of this act," etc.

We are of opinion that it is affirmatively established that those provisions of the constitutional and statutory law were not complied with in the matter of the tax sale which is here attacked, and the consequence is that the sale and the title claimed thereunder were, and are absolutely null and void, and that the nullity is of so radical a type as to take the case from within the bar of the prescription of five and three years which the defendant pleads. Breaux vs. Negrotto, 43 Ann. 426; Parish of Concordia vs. Bertron, 46 Ann. 356; Montgomery vs. Land and Lumber Co., *Ib.* 403; Finlay & Brunswig vs. Peres *et als..* 48 Ann. 17; Johnson vs. Martinez, *Ib.* 52; Hodding *et als.* vs City, *Ib.* 982; Hoyle *et als.* vs. Southern Athletic Club, 50 Ann. 879; Genella vs. Vincent, *Ib.* 957; Marmion vs. McPeake, 51 Ann. 1635; Kohlman vs. Glaudi, 52 Ann. 703; Welch vs. Augusti, 52 Ann. 1949; Geddes vs. Cunningham, 104 La., 313; Milaudon vs. Gallagher, 104 La. 713. The conclusion thus reached renders it unnecessary to consider the other grounds of attack upon the title set up by the defendant. We do not, however, find in them, or elsewhere, sufficient reason for holding the defendant to be a possessor in bad faith. Neither the failure of the tax collector to give the notice, nor his failure to offer the least quantity of the property, are defects which are patent upon the face of the title. And the error of one dollar, in the addition, to which our attention is called might very well have escaped observation. Under these circumstances, the following language is applicable to the question presented: " Tax titles carry the *prima facie* weight attached to them by the constitution. We are not disposed to attribute bad faith to a purchaser at a tax sale, unless a very clear basis exists." Font *et als.* vs. Land Imp. Co., 47 Ann. 275. See, also, Davenport vs Knox, 35 Ann. 486; Hickman vs. Dawson, *Ib.* 1087; Giddons vs. Mobley, 37 Ann. 417; Stafford vs. Twitchell, 33 Ann. 520; Hopkins vs. Daunoy, *Ib.* 1124.

The defendant, Hinchcliffe, as a possessor in good faith, is liable for rents and revenues from judicial demand. C. C. 503; Nicholson and

Wife vs. Tax Collector, 44 Ann. 76. The amount is fixed, by the admission of the parties, at $2.00 per acre, or $1033.74 *per annum* for all the land.

He asks to be reimbursed:

1. State and parish taxes, paid by him from 1891 to 1899, inclusive, amounting to $190.16, with 20% penalty, and 10% interest thereon from the date at which said taxes were paid, respectively.

2. Increased value given to land by wire fencing, $200.

3. Increased value given by levees and drains, $450.

4. Barn erected on tract, $600.

So far as the taxes from the date of defendant's possession are concerned, they are compensated by the revenues, and his possession may, reasonably, be fixed as having begun upon January 1, 1894. Nicholson and Wife vs. Tax Collector, 44 Ann. 76. The plaintiffs, however, owe the purchase price of the property, being the taxes of 1891, amounting, with penalties paid by the defendant, to $19.15; the taxes of 1882, amounting to $14.40, and the taxes of 1893, amounting to $24.80, together with 20 per cent. penalty on said $19.50 and interest, at the rate of 5 per cent. *per annum* on said several amounts from the dates of payment. The admission to which we have referred reads, in part as follows: "It is further admitted that the improvements placed on the land by the defendant have enhanced the value of the land up to $650, $200 being for the enhancement caused by fences, and $450 for the levees and drains. It is admitted, as to the value of the barn claimed by the defendant, that the barn itself has been placed on the property since the institution and service of this suit."

But there is no evidence in the record as to the cost of the barn, and whilst, even regarded as a possessor in bad faith from the filing of the suit, the defendant is entitled to recover its value, if the plaintiffs elect to retain it, there is no basis of proof upon which judgment can be rendered concerning it. Nor does it appear at what time the other improvements were made.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; and it is further ordered, adjudged and decreed that the plaintiffs, Alcee Foreman, and the minors Samuel, Emma and Nathan Foreman, herein represented by their undertutor, Joseph Hebert, be and they are hereby recognized as the owners, in indivision of the land herein sued for and described as as 489.56 acres being the N. ½ and the S. W. ¼ of Section 32, Town-

ship 10, South, Range 1, West; and 27.31 acres, being the southern portion of Section 29, Township 10, South, Range 1, West—all in the Parish of Acadia—and that they be put in possession thereof. And it is further ordered, adjudged and decreed that there be judgment in favor of said plaintiffs and against the defendant, Thomas Hinchcliffe, the present possessor of said land, for rents and revenues thereof at the rate of one thousand and thirty-three dollars and seventy-four cents ($1033.74) *per annum* from January 31, 1899, until he shall have surrendered such possession to the plaintiffs, subject, however, to the following credits, to-wit: The sum of $19.15, with interest thereon at the rate of 5% *per annum* from September 17, 1892, and with 20% additional; the sum of fourteen dollars and forty cents ($14.40), with interest thereon at the rate of 5% *per annum* from March 14, 1893; the sum of twenty-four dollars and eighty cents ($24.80) with like interest from March 6, 1894, and the sum of six hundred and fifty dollars ($650) with like interest from judicial demand.

It is further ordered, adjudged and decreed that the rights of the defendant with respect to the claim herein set up for $600, as the value of a barn said to have been built by him on the land in question be reserved.

It is further ordered and decreed that the defendant pay the costs in both courts.

Rehearing refused.