BREAUX, O. J.
Plaintiff brought this suit against the defendants to have a tax sale annulled and canceled, and the first question for decision is whether the defendants acquired a valid title to the land bought by them at tax sale.
The facts are that the property was sold in the year 1898 at tax sale for the taxes ■of 1895. The taxes for all the other years were paid by plaintiff.
Plaintiff received no notice from the sheriff prior to the sale. He obtained his patent in the year 1908, and when he repaired to the clerk’s office to have it recorded he learned that his land had been sold at tax sale, having received no prior notice. The sheriff of the parish, who was at that time deputy sheriff in charge of the collection of taxes, stated that he addressed a notice in a registered letter to Byrd McCrory at the Burnside post office; that it was not delivered to McCrory; that there was written on the envelope, “Return to writer,” and it was returned, and on the envelope was written, ■“Moved to Hobard.” The returned letter was in the possession of the sheriff’s office at the time of the trial, and it was produced, opened, and read. No further attempt was made to serve the notice. The post office of plaintiff was Hobard, and had been for some time. It is in evidence that the name ■of Burnside appeared on the assessment roll for 1905 opposite the name of McCrory. It is also in evidence that the property sold at tax sale, as above mentioned, had been sold for taxes due in 1902 some time prior to 1905, and redeemed by plaintiff.
As relates to the other ground alleged by plaintiff, that the property was not subject ,to taxation to the knowledge of defendants, the facts are that plaintiff made homestead ■entry of the land on August 20, 1897, and ■commuted the entry by paying for the land In cash, as required under 2301 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 1406). The usual receipt when such entries are made was issued to him, but no patent had been issued.
The record discloses that in January of the year 1900 a former agent of the Land Department of the United States reported against the entry in question, and charged that it was illegal for reasons stated. In December, 1903, another inspector made similar report against the entry, and some time thereafter a Commissioner of the General Land Office suspended the entry, and gave orders that notice be given to Claimant Mc-Crory and the other parties in interest. The acting commissioner, on the 12th day of August, 1908, specially revoked the charges against this entry for reasons specially stated, and issued instructions to the registrar and receiver in New Orleans accordingly. A patent was issued to the plaintiff, Mc-Crory, on the 12th day of August, 1908.
Judgment was for the plaintiff in rne district court, and defendant appealed. Plaintiff and appellant answered the appeal and asked for an amendment of the judgment by striking therefrom the sum of $42.75, taxes paid, and in the decree it is added that all taxes paid by the defendant McManus shall be paid to him.
[1] Returning to the tax sale, it is very evident that as no notice was given it was not valid. The adjudicatee was agent of the present owner, one of the defendants, and it follows that it is null as to the two defendants. The testimony of the sheriff and the record of his office confirms plaintiff’s testimony of failure to serve notice upon him.
This officer, whose duty it was to issue notices and serve them on taxpayers, was unmistakably informed that the post office of plaintiff was not Burnside, but Hobard. He knew that the notice had not been served, and on its return it should have been properly addressed and mailed. Notice is a constitutional requirement, and whenever *215 notice is due, as in this case, the want of notice is fatal to the tax sale. There is no evidence before us that the taxpayer was at fault or in any way negligent. He was not notified, and the fact that a letter was addressed to him in the manner that this letter was addressed and returned, with an indorsement informing the officer of the post office at which to address the taxpayer, is not the notice required. Something more should .have been done upon the return of the letter, and there should have been some little diligence to avoid the absolute want of notice. Hoyle v. Southern Athletic Club, 48 La. Ann. 879, 19 South. 937. The want of notice, it has been held, is fatal. Cucullu v. Brakenridge Lumber Co., 49 La. Ann. 1449, 22 South. 409; Hodding v. City of New Orleans, 48 La. Ann. 982, 20 South. 199.
How can a tax debtor pay the taxes if he is not informed by proper notice? 1-Ie has the right to assume that, under the Constitution, he will receive notice before his property will be sold. In re Interstate Land Co., 118 La. 587, 43 South. 173. Notice is jurisdictional. Riddell v. Rice, 128 La. 241, 54 South. 785. Foreman v. Hinchcliffe, 106 La. 225, 30 South. 762; Bartley v. Sallier, 118 La. 93, 42 South. 657; Villey v. Jarreau, 33 La. Ann. 291; McWilliams v. Michel, 43 La. Ann. 984, 10 South. 11; Johnson v. Martinez, 48 La. Ann. 52, 18 South. 909; Delta Land Co. v. Sholars, 105 La. 360, 29 South. 908.
Some importance is attached to the fact, on the part of the defendants, that the name and address of McCrory appeared on the assessment rolls of 1905. It does not appear by whom it was written on this roll. It was written there in compliance with the requirement of law, but by whom is not of any moment in this instance. It does not appear that the plaintiff knew that his address was thus written on the assessment roll; but, even if he had known, it would not have relieved the sheriff from the duty of remailing the.letter, addressed to the proper post office, after it had been returned. lían erroneous address is written on the assessment roll, it would serve no purpose to prove that the registered letter was addressed to another than the post office of the taxpayer, particularly when it appears that the sheriff knew that it was not the proper address of the taxpayer.
[2] We might have rested our decision at this time, were it not that plaintiff asks that he be not condemned to pay the taxes. It therefore becomes necessary to decide whether or not it was legal to sell the land for taxes. We take up for decision the second question — that relating to the homestead entry. The contention is that the commissioner’s order, suspending this entry, was-ultra vires by reason of the fact that the-title was in the entryman at the time; that the suspension of the entry did not relieve-the entryman from the necessity of paying taxes; and that the condition, as relates to-the necessity of paying the taxes, remained unchanged. It may well be said in answer-that, although the land is subject to taxation, the government may refuse to issue a patent if its laws have not been complied with. If the entryman has committed a wrong, it surely can temporarily suspend the-entry, in order to institute inquiry.
In Railway Co. v. Prescott, 16 Wall. 607, 21 L. Ed. 373 (Justice Miller was the organ of the court), it was decided that under section 21 of the amendatory statute of 1864 the grantee could not acquire title before-paying the costs of survey. The court said:
“While we recognize the doctrine heretofore laid down by this court, the land sold by the United States may be taxed before they have parted with legal title by issuing a patent. It is to be understood as applicable to cases where the right to the patent is complete, and the equitable title is fully vested in the party without anything more to be paid or anything to be done, owing to the foundation of the right.”
*217 Here the right was exercised by the Land Department, for the reason that the Department was given to understand that fraud had been committed, and in order to probe these frauds a suspension followed. The United States have control of the public domain, and, until it finally xiasses to the grantee, the . state is without authority, through the tax-collecting department, to take from the general government any part of her control.
Although the foregoing are our views, we find no difficulty in agreeing with the proposition, advanced by defendants’ learned counsel, that the certificates of registrars of the United States for the price of public lands are sufficient evidence of title to form the basis of a petitory action. This view has the support of ample authority. But the existence of the right is not to be taken as cause sufficient to divest the Land Department of its legal authority, prior to the issuance of a patent, in matter of the entry ■of the land. It is unquestioned now that whatever the United States has a right to do the individual states have no right to undo. Such might be the effect if lands, the entry of which, is suspended, could be seized and sold by the state in satisfaction of taxes .assessed while the land is under suspension. As between the entryman and the United States government, there is nothing complete, as relates to final entry, until it is shown that the entryman has bona fide carried out the requirements of the Land Department. Burroughs on Taxation, p. 130. Under the homestead law, possession is considered as a species of property in the hands of the citizen. It is said that the land is :not taxed, but the mere possession and the entryman’s improvements may be taxed. It has been decided that, until a patent issues, the courts cannot control the Land Department in the disposal of its lands. Laramie v. Steinhoff, 11 Wyo. 290, 71 Pac. 993, 73 Pac. 209.
Defendants have cited a number of decisions construing special statutes in regard to the period of inquiry into the question of fraud. The question of "the dignity of the record and the effect of patents are discussed in the cited decision; but we found no expressions denying to the government the right to inquire in due time into charges brought against an entry. Without further decisions upon the subject and statutes, we must decline to hold that the order suspending the entry was null and void.
The defendants urged that the plaintiff redeemed the first act of sale for taxes made of the property, but we have not found that in this redemption he has waived any right. Had this been intentional on his part, it would have been difficult to hold that, in view of the situation in which he was placed, he was prejudicing his rights by declining to pay any more taxes, in view of the order suspending his claim entirely and leaving him virtually without a title. But we have seen that there was nothing intentional, as he was not notified, as is amply proven by the evidence.
For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be amended by striking from it that part which condemns the plaintiff to pay to the defendants the sum of $42.75 paid by the defendants, and also any other taxes paid by the defendants, if any others have been paid. With this amendment, the judgment is affirmed.