### No. 1777.
### Second Circuit Appeal.

---

## FRANK  M.  CHANCE  v.  MISS  LIZZIE HOLLINGSWORTH.  Appellant.

---

(November 21, 1924, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana  Digest—Taxation—Par.  281.**
   Notice to the tax debtor is essential to the validity of a tax sale under section 51 of Act 170 of 1898.

2. **Louisiana  Digest—Taxation—Par.  281, 282, 285.**
   Where the evidence shows that the registered notice mailed to the tax debtor omitted a notice of taxes due on part of the property; it will not be considered as evidence of notice of taxes due on that property omitted, nor evidence of reasonable diligence taken to notify the tax debtor.

Appeal from the First District Court, Parish of Caddo, Hon. J. H. Stephens, Judge.

This is a suit to set aside a pretended tax sale.

Judgment for plaintiff and defendant appealed.

Judgment affirmed.

Lewell C. Butler of Shreveport, attorney for plaintiff and appellee.

Marion K. Smith, attorney for defendant and appellant.

ODOM, J. Plaintiff alleges that he is the owner of Lot 10 of Block 10, University Heights Subdivision, City of Shreveport, La., and that on June 28th, 1919, the Sheriff and Tax Collector of Caddo Parish pretended to sell an undivided interest in said property to Miss Lizzie Hollingsworth, defendant, and that on July 14th, 1919, the Sheriff and Tax Collector executed a pretended deed to the purchaser, said deed being duly recorded in the recorder's office of Caddo Parish, La.

He especially alleges that prior to the pretended sale of said property at tax sale, the Sheriff and ex-officio Tax Collector failed and neglected to comply with the provisions of Section 51 of Act 170 of 1898, in that he failed to give the notice that any taxes were due, as is specially required, and that because of such failure to give notice as required by law before making the sale, the said tax sale is null and void.

The tax purchaser defends the suit on the grounds "that the provisions of Act 170 of 1898, and particularly Section 51 thereof, were strictly complied with."

The sole issue involved in this case has been correctly stated by defendant in his brief, as follows:

"Did the tax collector comply with all the legal requisites for giving notice of delinquency to the tax debtor, plaintiff herein, before selling his property? If he did not, the tax sale must be held invalid."

### OPINION

Section 50 of Act 170 of 1898, provides that as soon as possible after January first

in each year, the tax collector shall address to each tax payer who has not paid his taxes on immovable property, written or printed notice that his taxes on immovable property must be paid within twenty days after service or mailing said notice, or that said property will be sold, according to law.

Section 51 of said Act provides that "in the country parishes, this notice shall be sent by registered mail."

Notice to the tax debtor is essential to the validity of a tax sale. No citation of authority is needed on this point. Therefore, our only inquiry in this case is whether the Sheriff and ex-officio Tax Collector, the officer whose duty it is to collect parish and state taxes, complied with the requisites of the law with reference to giving notice of delinquency before selling the property of the tax debtor.

It must be borne in mind that actual notice to the tax debtor is not necessary, because in some instances, as in this one, actual notice is impossible; but the law prescribes the method to be pursued by the tax collector in giving notice, and unless that method is pursued, a sale of property for unpaid taxes is a nullity. As stated, actual notice is not required, but in order that the sale be valid, it is necessary that such proceedings be complied with which create a legal presumption that that notice was received. It is presumed that a letter, properly addressed to a person at his correct post office address, and deposited in the United States mail. That means, of course, that a notice of delinquency placed in an envelope, properly addressed, with correct office given, shall be deposited in the United States mail.

In this case, there was no actual notice of delinquincy to the tax debtor. He was in France, with the American Expeditionary forces in the first half of the year. He reached Shreveport on July 1st, just two days after the property in question was sold by the Tax Collector.

We find that on April 15th, 1919, a printed notice to Frank M. Chance setting out that he was due taxes amounting to $2.09 on property valued at $200.00, was mailed at Shreveport, and addressed to him at Shreveport, La. This notice was not delivered and was returned to the Sheriff and Tax Collector, and was opened and filed in evidence on the trial of this case. Plaintiff contends that this notice addressed to the tax debtor at Shreveport, La., was not in compliance with law, for the reason that Frank M. Chance, the tax debtor, lived at Blanchard, La., about 12 miles from Shreveport, while on the contrary, the defendant, the tax purchaser contends that this notice was sufficient, because the tax debtor lived in Shreveport. The tax debtor did at one time live in Shreveport. He testified that he lived in this city from 1908 until 1917. His address while residing in the City was, at one time, 319 Crockett Street, and later, at 822 Snow Street. But he says that in 1917, he left the City and moved to Blanchard, where his father resides, and began at once to live with his father; that he enlisted in the service of his country while residing at Blanchard; that Blanchard was his post office address at all times after he left Shreveport in 1917. His testimony is corroborated on that point by that of his father, who testified substantially as did the son. The testimony on this point, that is on the question of Frank M. Chance's removal from Shreveport in 1917 to Blanchard to reside, is not contradicted. We must, therefore, accept it as a fact he did establish his residence at Blanchard, as they say he did.

Mr. Flournoy, a deputy tax collector, testified that on the assessment roll for the year 1917, the post office address of Frank M. Chance was given as Shreveport, La.,

and he says "no address is given but Ward 4 in the City of Shreveport." And he says further that his address on the assessment rolls for 1920 is given at 319 Crockett Street, City of Shreveport.

The defendant stresses these facts in support of her theory that the tax debtor resided in Shreveport continuously and not at Blanchard.

We see nothing in the testimony of Mr. Flournoy to contradict that of the plaintiff and his father on the question of residence. At the time the assessment for 1917 was made, plaintiff did live in Shreveport, and we are not advised as to why his address was given at Shreveport on the assessment rolls of 1920. We are not concerned with conditions which prevailed in 1917 and 1920 but with those of 1918, the year in which the taxes for which the property was sold were assessed, and 1919, the year in which it was sold.

Defendant cites the last mentioned fact as tending to show that plaintiff's correct address was at Shreveport in 1919, when the tax notice was sent out. We find nothing in the record to warrant us in holding with defendant on this point. On the contrary, there is abundant evidence in the record to show not only that plaintiff lived at Blanchard, but that the tax collector's office force was in possession of knowledge that he lived there. Mr. Howell Flournoy, who testified that he was connected with the sheriff's office in the year 1919 was shown the tax roll for the year 1918 and was asked if the registered notice dated April 15th, 1919, and which was offered in evidence and is attached to the record, referred to the property in question in the City of Shreveport, and he said it did. And he was asked:

Q. "Now I will ask you to examine the tax roll for the year 1919 (1918) for Ward three (3), Caddo Parish, including Blanch

ard (the stenographer adds note that it should be 1918) and state whether or not your record shows notice to have been mailed to Blanchard?"

A. "Yes, sir."

Q. "As to what date?"

A. "April 19, 1919."

And he was further asked if the printed notice sent out that year did not show the amount of taxes due, and he said it did. And he was asked: "What does the record show the taxes for the Blanchard property to have amounted to for that year?"

A. "Nineteen dollars and twenty-eight cents; that is, without interest and penalties."

Q. "What date were those taxes actually paid?"

A. "May 3, 1919."

And with reference to this Blanchard property, he was asked: "I will ask you to state whether or not registered notice was mailed to Frank M. Chance, and what his address was?"

A. "It was shown by the roll that the registered notice was mailed to Frank M. Chance, Blanchard, La., Apr. 9, 1919."

The uncontradicted testimony is that this notice mailed to Frank M. Chance at Blanchard, was received by his father, C. M. Chance, who lives at Blanchard; that C. M. Chance, upon receiving this notice, wrote T. R. Hughes, Tax Collector, that his son was in France, and asking if it was necessary that the taxes be paid at once, and that Mr. Hughes answered at once that it was, and that if the taxes were not paid, the property would be sold.

C. M. Chance, on May 3, went to the tax collector's office and announced that he wanted to pay all of Frank M. Chance's taxes, and he was asked if he had received notice and he replied that he had, and he

produced the notice which he had received through the mail, addressed to his son, at Blanchard, La. He at once paid the amount of taxes shown to be due on this notice and was given a receipt. He was asked if the notice which he received was registered, and he said it was not, but we think he must be mistaken about this, as Mr Flournoy says his records show that the notice was registered. But that makes no difference. The point is that the Tax Collector's office sent a registered notice to Frank M. Chance, the tax debtor, at Blanchard, La., which notice was received by his father, who at once acted as the agent of the tax debtor, and paid the taxes. The defendant is therefore not in position to say that the tax debtor did not live at Blanchard. The Tax Collector must have had some information that he lived there, for he mailed the notice to him at that place. He may have gotten his information from the record, but whatever the source of his information was, the fact is that he acted upon it and sent the notice to him at Blanchard. The plaintiff testified that other communications from the Tax Collector's office had been sent to him there, and this is not denied.

In the case of Hoyle vs. Southern Athletic Club, 48 La. Ann. 878 (884), 19 South. 937, the Court said:

"Article 210 of the Constitution, in requiring that notice should be given to the tax payer, evidently contemplated that reasonably diligent steps should be taken to make the notice effectual."

In McCrary vs. Bradford, 130 La. 212, 57 South. 892, the syllabus which was prepared by the Court reads, in part, as follows:

"Notice to the tax debtor is essential to the validity of a tax sale, and where the Sheriff mails a letter to 'Burnside', which is returned with the notation that the postoffice address of the tax debtor is 'Hobard', and the Sheriff fails to send him a notice at that place, there has been no notice, and the sale of the tax debtor's property is void."

We have noticed that in the year 1918, the plaintiff had property in Shreveport, Ward 4, and property in Ward 3, Blanchard, La. Evidently, the two pieces of property were not assessed together, and there were two separate notices sent out, one showing taxes on the Blanchard property amounting to $19.38 was mailed to the tax debtor at Blanchard, La., and the other, showing taxes due on the Shreveport property, amounting to $2.09, was mailed to him at Shreveport, La. The one mailed to him at Shreveport, La., was unclaimed, and was returned to the Tax Collector. The one mailed to him at Blanchard was received by his father, who acted for him, brought the notice to the Tax Collector's office, presented it, and paid the amount of taxes shown by the notice to be due. This was on May 3rd. The notice mailed to Shreveport was dated April 15th, and, according to Mr. Swearengin, an employee of the Post Office department at Shreveport, that notice passed through his hands on April 20th, and was returned to the sender, unclaimed. Therefore, on May 3rd, when C. M. Chance appeared at the Tax Collector's office and presented a similar notice which had been mailed to Blanchard, La., the Tax Collector had notice that the tax debtor, or some one who represented him, lived at Blanchard, and he also had notice that no one received mail addressed to him at Shreveport. He should have mailed another notice to the tax debtor at Blanchard, La. Had he done this, we have no doubt that C. M. Chance, who had received the other one, and who had paid all the taxes called for by that notice, would have paid the taxes on the Shreveport property. The failure of the

Tax Collector to do this was not in compliance with law. He did not avail himself of the means at hand to give the tax debtor the notice required by law. The tax debtor had no notice of delinquency. That is a fatal defect in the proceedings leading to the tax sale.

It must be borne in mind that the registered notice which was mailed to Frank M. Chance at Blanchard did not show the amount of taxes due on the Shreveport property. It showed only the amount due on the 109 acres of land assessed to the tax debtor in Ward 3, at Blanchard. This amount was paid, and a receipt issued therefor.

C. M. Chance, who paid the taxes for his son on May 3rd, testified, and his testimony is not disputed, that he told the Tax Collector that he wanted to pay all the taxes due by his son, Frank M. Chance He was asked if he had a notice, and he replied that he had, and produced it. He paid the full amount called for by that notice, and he says that the Tax Collector would receive no more.

There is no evidence in this case that either the tax debtor or his father, who paid the taxes for him, knew that he owed any additional sum for taxes. The father testified that he knew his son owned the property in Shreveport, but did not state that he knew he owed the additional amount. Neither the tax notice nor the tax receipt, so far as we are informed, gave a description of the property on which the taxes were due and paid.

For the reasons assigned, the judgment of the lower Court is affirmed, with all costs.