The opinion of the court was delivered by
Nicholls, C. J.
Plaintiffs’ action is petitory. Their petition refers to certain tax sales as those under which defendant claimed to hold, but they are referred to as absolute nullities and are asked to be so •decreed. Defendants’ possession is admitted.
The tax sales which defendants set up as those -under which they assert ownership are declared by plaintiffs to be absolutely null on two grounds:
1. Because the property was improperly assessed and sold as a half and as a third of certain squares instead of an undivided half •and an undivided third of those squares.
2. Because no notice was given in the tax proceedings to the succession of J. M. Hoyle or to the heirs of J. M. and Rebecca Hoyle, as required by Art. 210 of the Constitution. The deeds of sale are on printed forms prepared in advance to apply to all sales which might be made in tax proceedings in the First District of New Or *880 leans. These forms contain blanks intended to be filled up so as to-make each particular form, when used, made to apply to some-special case which had arisen. After the usual recitals of acts of sale stating the appearance of the parties before the notary and the-capacities in which they appeared, one of the deeds to the State-proceeds to say that the deputy State rax collector of the First District of New Orleans declared “that acting by virtue of the power vested in him by Act No. 77 of the Legislature of 1880, the tax or-assessment rolls of the parish of Orleans on real estate were duly filed and recorded in the moi'igage office of the parish and with him,, the tax collector; that as soon as the said rolls were thus filed he, the said tax collector, published a notice once a week for-two weeks in a paper published in the parish of Orleans, setting-forth in substance that the taxes assessed on real 'estate in the-said parish in the year 1881 are set forth in said tax rolls on file in said tax collector’s office and in the said mortgage office; that f-he-said taxes are due and would become delinquent on December 31,. 1881; that the same will draw interest from said December 31, 1881 (we insert the dates as mentioned in one of the deeds so as to make the description of the acts clearer), until paid or sold in accordance with Act 210 of the Constitution. * * * And the said tax collector further declared that as soon after the second day of January, 188-, as possible he addressed to each taxpayer who had not paid his or her taxes on immovable property for said year 1881 a written or printed notice, setting forth in substance that the State and city taxes assessed to and against said taxpayer on immovable property in said parish (stating in said notice the assessed value of each specific piece of said property and the taxes due thereon) fell due the day the tax rolls were filed in the mortgage office, stating the date of such filing, and that the same should have been paid in full on or before the first of the month succeeding said filing; that said taxpayers became delinquent for said taxes on the first day of said month; that the said taxes will bear interest at the rate of eight, per cent, per annum after December 31,1881, until paid in full; that, after the expiration of twenty days from the date of said notices he, the tax collector, will advertise for sale each specific piece of immovable property on which said taxes are due in the manner and form provided for judicial sales; that at the principal front door of the Civil District Court of said parish he will sell within the legal *881 hours for judicial sales, for cash and without appraisement, such portion of each specific piece of property as the debtor shall point out, and that in case the taxpayer will not point out sufficient property he, the said tax collector, will at once sell for cash and without appraisement the least quantity of said specific property which any bidder will buy for the amount of said taxes, interest and costs.
And the said tax collector further declared that he delivered to each taxpayer in person or left at his residence or place of business or mailed to him by registered letter, postage prepaid, addressed to the post office of said taxpayer; one of the foregoing mentioned notices >>****
The act goes on to recite the fact of the publication in a newspaper in New Orleans of a general notice, substantially of the same form, addressed to all known and unknown owners of immovable property in said district, which is described on the tax rolls; “ that at the expiration of twenty days, counting from the day the last of said notices were delivered, mailed, published or posted, the tax collector proceeded to advertise for sale in two newspapers mentioned in the manner provided for judicial advertisements and in the form prescribed by law (and after having complied with all the other requisites of law), all the immovable property on which said taxes were due, being the properties hereinafter described to enforce the payment of State taxes due on same for the year 1881, the said properties being advertised in the names of person or persons on which each piece was respectively assessed. That after said publication * * ■ each piece was separately offered for|sale to enforce the payment of said taxes due on same * * that after repeated offerings and after a strict compliance with all other requirements of law, the same, together with all improvements thereon, were each separately bid in for and adjudicated to the State by said tax collector, no one having offered to pay said tax or bid on said property at all or any portion thereof, which saidproperties so adjudicated are hereinafter separately described. “ Immediately following each description ” (so the deed declares) “ is the name of the person or persons in whose name the said property was assessed for the said year 1881, together with the total amount for which said properties were respectively offered and for which in default of any bid or any offer to pay each specific piece of property hereinafter described was respectively and separately adjudicated to the State ” * * *
*882 Below followed the description of one of the properties claimed by the defendant in this suit — that described as one-half of square No. 838 as above stated. Immediately following the description is the recital “ which said property was duly and legally assessed for 188— and advertised in the name of Est. J. M. Hoyle.
“ Total amount for which above property was adjudicated to the State, including taxes of 1881, interest on same to date of adjudication, costs, fees, commission, advertisement, etc., eleven and 65-100 dollars. * * * And in pursuance of said adjudication and by virtue of the'provisions of said Act No. 77 of 1880, and the law for such cases provided, the said tax collector, and in the name and on behalf of the State of Louisiana, does by these presents, grant, bargain, sell, assign, transfer, set over and deliver unto the State of Louisiana the property hereinbefore described, with the right to be put into actual possession thereof by order of any court of competent jurisdiction.” The recitals in the deed for the second piece of property were substantially the same as those just given; the act under which the tax collector declared he was proceeding being Act No. 96 of 1882.
The recital as to the first notice sent out after the filing of the tax rolls in the Recorder’s office was a general statement that after the second day of January, 188 — , he addressed and mailed to each taxpayer who had not paid his or her taxes, for said year 1882, a notice setting forth in substance that the State taxes assessed to and against said taxpayer for said year 1882 on immovable property in said parish (stating in said notice the property assessed and the assessed value of said property and taxes due thereon) were then due; that the rolls had been filed in the mortgage office; that said taxes must be paid within twenty days after the mailing of said notices; that after the expiration of twenty days from the date of the mailing the property would be advertised, etc. This is followed by a recital that “one of said notices, correct in form and substance, was duly and legally mailed to the delinquent taxpayer hereinafter named.”
The only mention made of the name of Hoyle in either deed is to be found in that portion in which it is declared that the properties were assessed in the name of “Esc. of J. M. Hoyle.”
W. D. Hoyle, one of the sons of J. M. Hoyle, and who was appointed tutor of his minor brothers and sisters, was twice placed upon the stand as a witness to prove that he had never, either indi - *883 vidually or as tutor, received the notices referred to in the deeds of the tax collector. When first on the stand his statement was simply that he had no recollection of having received the notices. On his second examination he stated that since his first examination he had refreshed his memory and he was then certain he had not done so. While the reasons which he assigns as those which had caused him to become fixed in his opinion did not, we think, furnish a very satisfactory basis for him to have done [so, none the less the case comes to us with a positive denial on his part, to which the District Judge, who saw and heard the witness, gave credit. The different heirs who have become of age were also placed on the stand and each made as to himself and herself a similar denial.
We do not think this testimony by itself would conclusively settle the question of notice as entering as a factor in determining the legality of the tax s ales. It might well be that in point of fact no notices were actually received by any of the parties and yet the sales could stand, for if the assessments were properly made and the tax collector in giving the notices conformed to the requirements of the statute and of the law, it would not follow that they would be ineffectual because they did not reach the parties they were intended to reach. It frequently happens that citations made through service at the domicile are mislaid or are not handed to the person to be cited — none the less the citations are well made. Again, in matters of notice of dishonor of notes, if the requirements of a statute be followed as to the time, place and mode of service, as for instance by placing a letter properly addressed and prepaid in the postoffice within the time fixed by law, it has been held that it is not necessary to prove that the letter was received and that miscarriage would not prejudice the party giving notice (see Woods Byles on Bills, p. 282, Eighth Edition). We are, therefore, to inquire whether there be evidence before us going to show that notice was properly sent. It will be noticed, as we have said, that in neither of the deeds is the name of Hoyle mentioned in any place other than that where the property is referred to as having been assessed “Est. of J. M. Hoyle.” It is nowhere intimated that the tax collector knew or had taken any trouble to ascertain who the administrator or representatives of J. M. Hoyle were. There is no direct averment or recital that the Estate of Hoyle was delinquent for the taxes for the year in which the prop *884 erty was sold; that fact is only reached inferentially and there is no attempt by the tax collector to come down to particulars in reference to notices. There is a general sweeping recital that notices to all delinquent taxpayers on the rolls were given, but there is no special mention of any particular person or persons having been notified and no attempt to show to whom any particular mailed notice was addressed. Acting on mere presumptions as we have to do, we would have to assume that the notices were placed in the postoffice, addressed to “ Est. of J. M. Hoyle ” that is, the tax collector, in giving the notice, followed the assessment. Would such a notice so sent fulfil the requirements of the law ? Asa matter of course, on the face of the papers, the.collector was advised he had to deal with a succession. The assessment roll itself disclosed that fact to him.
Under Sec. 35 of Act No. 77 of 1880, the tax collector was directed to either deliver a notice to each taxpayer in person or to leave one at his residence, or to mail him one by registered letter, postage prepaid, addressed to the postoffi.ee of said taxpayer.
Under Sec. 50 of Act No. 96 of 1882, the tax collector was directed to either deliver a notice to each taxpayer in person or to leave one at his residence or place of business, or to mail him notice by postal card, addressed to the postoffice of said taxpayer.
Was a letter addressed to “Estate of J. M. Hoyle,” and placed prepaid in the postofflee, a fair and reasonable compliance by the tax collector with the requirements of law. Article 210 of the Constitution, in requiring that notice should be given to the taxpayer, evidently contemplated that reasonably diligent steps should be taken to make the notice effectual. It has always been recognized that a strict observance of the formalities called for by the law is exacted in matters of tax sales — a stricter observance in fact than in almost any forced proceeding under and through which ownership of property is made to shift. In view of this fact we have examined authorities, bearing upon the mode of addressing notices in matters other than tax proceedings. In matters of the notice of bills we find that it was held in Massachusetts Bank vs. Oliver, 10 Cush. (Mass.) 557, that a notice of dishonor addressed “ to the estate ” of the deceased endorser without inquiry shows lack of diligence, and is therefore bad. In Christmas vs. Fluker, 7 Rob. 13, a notice £' to the legal representatives” of a deceased en *885 dorser was pronounced insufficient... In that case the heirs had been placed in possession of the succession before the maturity of the note.
In the present ease the heirs (with the exception of one who was tutor of the others) were all minors, who under the law itself were made to accept the succession of their father and mother under benefit of inventory. There is no evidence of their having been recognized as heirs or placed in possession.
In Louisiana State Bank vs. Dumartrait, 4 An. 483, it was held that where the death of an endorser was known and his succession was represented by an executor, notice should be sent to him and a letter addressed to the deceased was bad.
■ In Maspero vs. Pedesclaux, 22 An. 227, this court held that a notice of dishonor, though addressed to a deceased endorser, would hold the heirs if it could be shown as an actual fact that they had received the notice. In the case at bar, the parties swear they did not receive the notice.
In City of New Orleans vs. Heirs of Schmidt, 10 An. 771, it was held that an advertisement (to effect notice) in the name of the “Heirs of Schmidt” was insufficient on account of vagueness. To the same effect is City vs. Heirs of St. Romes, 28 An. 17. In City vs. Estate of Samuel Stewart, 28 An. 180, the executrix of the succession of Stewart appealed from a judgment against “ the estate of Samuel Stewart ” for taxes due the city of New Orleans, on the ground that the citation (by publication) was not sufficient, because an estate was a thing and not a person. The judgment below was affirmed. In City vs. Ferguson, 28 An. 240, defendant pleaded that the assessement or publication was improperly made in the name of Mrs. J. A. Ferguson simply, and the words “Estate of’- ’ were not added as they should have been, seeing that the assessment was made after her decease. The court in reply said that the object in giving the name at all was obvious, the sole purpose being to describe or identify the property taxed and the tax assessed by the use of the name of Mrs. J. A. Ferguson, which would have been sufficient, if she were still living — that after her decease the word “Estate” would no more clearly indicate that the property taxed was that known as Mrs. Ferguson’s.
In Irvin vs. City, 28 An. 670, publication was made in the name of Richard Murphy, who had been dead for sever.al years. Judgment by default Was confirmed on this publication as a citation. An in *886 junction issued against a sale of the property on behalf of a minor, Richard Murphy, who acquired the property from Richard Murphy, having been set aside by the District Court, this judgment was affirmed on appeal. Mr. Justice Wyly dissenting.
It will be noticed that in these cases the parties in interest came forward and contested prior to a sale of their property, showing they were fully advised of the claims set up against it.
After consideration of this case we have reached the conclusion that the adjudication to the State must be held to have conveyed no title to it for want of proper notice. The State having no title conveyed none to the defendant.
The judgment appealed from is affirmed.