925 So.2d 1172 (2006)
Gabriel LEWIS, Jr.
v.
SUCCESSION OF Matthew JOHNSON, et al.
No. 2005-C-1192.
Supreme Court of Louisiana.
April 4, 2006.
*1173 Bruce A. Gaudin, Opelousas, for Applicant.
Guglielmo, Lopez, Tuttle, Hunter & Jarrell, Alex L. Andrus, III, James P. Doherty, Jr., for Respondent.
CALOGERO, Chief Justice.
In this case, we are called upon to decide whether a practice of providing notice of the delinquent property taxes on immovable property, to only one co-owner of property owned with others in indivision, deprives the other co-owners of due process, thus rendering a subsequent tax sale null and void. The district court and court of appeal held this tax sale valid, finding that the tax collector provided sufficient notice to the property owners, defendants' ancestors in title. Following our review of the facts and applicable legal principles, we find that the delinquent tax notice provided to only one co-owner of immovable property in this case is deficient, rendering the subsequent tax sale null and void with regard to the other co-owners' interests in the property. Further, a tax collector may not substitute for actual or written notice a publication advertising a tax sale, which is similarly deficient for failing to list each property owner's name or failing to furnish an additional means of reasonable identification of the property.

FACTS AND PROCEDURAL HISTORY
On June 15, 1994, the Sheriff and Tax Collector of the Parish of St. Landry (hereinafter "sheriff") sold a thirteen-acre property to Plaintiff, Gabriel Lewis, Jr. (hereinafter referred to as "Lewis") for the sum of $90.00.[1] At the time of the St. Landry Parish tax sale, Deola Mae Johnson James, Matthew Johnson, Sr., Myrtle Johnson Franklin, and Aaron Perry Johnson, Sr. (hereinafter collectively referred to as "the Johnson siblings") co-owned the thirteen-acre property. Defendants, Matthew Johnson, Jr., Saida Johnson Baker, Sidney B. Johnson, Allen Johnson, Charles Franklin, Cynthia Franklin Steward, and Aaron Perry Johnson, Jr. (hereinafter collectively referred to as "the Johnson heirs") inherited the property from the four Johnson siblings. On April 2, 2003, Lewis filed a petition to quiet tax title. The Johnson heirs challenged this petition and argued that the sale was null because *1174 they had not received proper notice of the tax sale, which violated the co-owners' rights to due process under the Fourteenth Amendment of the United States Constitution.
Prior to the tax sale, the thirteen-acre tract had been in the Johnson family name since 1962 when Laura Aaron Johnson, wife of Ned Johnson, acquired the property in a partition with the heirs of Simon Aaron. Fifteen years later in 1977, Laura Johnson sold the thirteen acre-tract to her four children, who in the act of sale are identified as "Deola Mae Johnson James, Matthew Johnson, Sr., Myrtle Johnson Franklin, and Aaron Perry Johnson, Sr." The four siblings remained the record co-owners at the time of the tax sale in 1994.
The St. Landry Parish's Assessor's Office assessed the thirteen-acre tract in the name of "Johnson, Matthew, et als., c/o Deola Mae James, 4020 Ave. M, Galveston, TX 77550." Although the record does not indicate why only Deola Mae, instead of all four co-owners, received the annual tax notice, it was she who was the only co-owner that had received the tax notice for sixteen successive years.[2] At trial, Chief Deputy Priscilla Taylor of the St. Landry Parish Assessor's Office testified concerning the practice of preparing the tax rolls as follows: "We normally send one tax notice. If the property is undivided it doesn't matter how many people own it, we only generate one tax notice." According to her, in the ordinary course of business, the assessor assesses the property in the name of the first named vendee in the act transferring title, unless the property owners request that the property be assessed in a name other than the first named vendee. The assessor sends no notice to the remaining co-owners.
Until 1993, the United States Post Office successfully delivered the tax notice to Deola Mae Johnson James, and the property taxes were timely paid. In 1993, however, the taxes were not paid. A delinquent tax notice was prepared and sent to "Johnson, Matthew, et als., c/o Deola Mae James, 4020 Ave. M, Galveston, TX 77550." The sheriff sent the notice by certified mail return receipt requested on three separate dates, but on each occasion, the notice was returned and marked unclaimed by the United States Postal Service. Consequently, the sheriff advertised in The Daily World, a newspaper published in the city of Opelousas, Louisiana, the upcoming tax sale on three different occasions: May 23, 1994, June 5, 1994, and June 14, 1994. In short, the newspaper notice stated that the thirteen-acre tract would be sold at 10:00 a.m. on Wednesday, June 15, 1994, for non-payment of the 1993 property taxes.[3] The sheriff did not make *1175 any other attempts to notify Deola Mae nor any attempt, apparently, to find and/or notify the other co-owners.
At the tax sale, Lewis purchased two tracts, the thirteen-acre tract of land involved in this case and a second property, a fifteen-acre tract of land that had also been owned by the Johnson siblings before they sold that tract to one J.C. Guillory on August 18, 1993, almost ten months before the involved tax sale. On April 11, 1996, the sheriff executed a certificate of redemption for the fifteen-acre tract after receiving $319.23 from Deola Mae Johnson James.[4] When Lewis attempted to quiet title to the thirteen acre tract in 2003, the Johnson heirs contested the tax sale. They alleged that not a single Johnson sibling had received proper notice of the tax sale. The Johnson heirs sought dismissal of Lewis's lawsuit.
The district court rendered judgment in favor of Lewis and upheld the tax sale. Assigning reasons for judgment, the district court determined that the sheriff had taken the proper steps by mailing the appropriate tax notices, issuing the appropriate delinquency notices, and making the appropriate advertisements. The district court further added that neither the sheriff nor the assessor could have easily ascertained the addresses of the various owners of the property.[5]
The Johnson heirs appealed the district court's judgment to the Court of Appeal, Third Circuit, arguing that the tax sale was invalid because none of the co-owners of the property had received proper notice. Rejecting the Johnson heirs' argument, the court of appeal majority affirmed the district court judgment. Lewis v. Succession of Johnson, 04-1413 (La.App.3 Cir. 4/20/05), 900 So.2d 1114. After acknowledging the obvious, that the sale of property at a tax sale is an action that affects property rights under the Fourteenth Amendment, the court of appeal agreed with the district court's finding that the sheriff had taken additional reasonable steps to notify the taxpayer of the delinquency after the original notice was returned undelivered. Id. The panel opined that to require the sheriff or the assessor to conduct a title search would impose an overly burdensome duty. Id. The appellate court concluded that, under La.Rev. Stat. 47:2180, the sheriff had taken the requisite steps by sending legal notice to the owners' "duly designated representative," Deola Mae, at the valid and duly designated address, followed by proper publication of the tax sale on three separate occasions. Id.
The Johnson heirs filed an application for writ of certiorari in this court, seeking review of the lower courts' rulings. In *1176 their application, the Johnson heirs essentially adopted the argument of the dissenting judge in the court of appeal. The dissenting judge found, and the Johnson heirs argued, that because the sheriff and the Assessor's Office did not provide reasonable notice to all of the co-owners of the property as required under the Fourteenth Amendment and United States Supreme Court precedent, the tax sale is an absolute nullity. Our court has not had occasion to address this Fourteenth Amendment issue as it applies in a case of co-owners after 1983 when the United States Supreme Court rendered its opinion in Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). We granted this application to consider the merit of the Johnson heirs' arguments. Lewis v. Succession of Johnson, 05-1192 (La.12/9/05), 916 So.2d 1037.

LAW AND DISCUSSION
The Johnson heirs contend that none of their four ascendants had received notice of the tax sale and consequently, that the tax sale of June 15, 1994 is null and void. We must, therefore, determine whether the tax sale is null and void because of the deficiencies in the notice that was given. In this case, the sheriff sent notice by registered mail to Deola Mae James on three separate occasions, but did not send notice to her siblings, causing this court to evaluate the notice provided to the siblings separately from the notice provided to Deola Mae. Thus, we must address whether the sheriff sufficiently notified the Johnson siblings of their delinquent property taxes as required by the Fourteenth Amendment and whether the subsequent tax sale deprived the Johnson siblings of their property rights as co-owners of the immovable property.
In Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the United States Supreme Court recognized that the sale of property for nonpayment of taxes is an action that affects a property right protected by the Due Process Clause of the Fourteenth Amendment.[6] In Mennonite, the mortgagee of a property contested a tax sale that occurred after the homeowner had failed to pay her property taxes. Mennonite, 462 U.S. at 794, 103 S.Ct. 2706. The mortgagee was not provided notice of the mortgagor's delinquent payment of the taxes or the subsequent tax sale. Id. After evaluating the mortgagee's claim from a due process perspective, the Supreme Court held that "a mortgagee possesses a substantial property interest that is significantly affected by a tax sale" and therefore "is entitled to notice reasonably calculated to apprise him of a pending tax sale." Id. at 798, 103 S.Ct. 2706.
More specifically, and of even greater relevance to the case before us, the Supreme Court has held that notice must be sent by mail or other means certain to ensure actual notice if the party's name and address are readily ascertainable. Mennonite, 462 U.S. at 800, 103 S.Ct. 2706. Mennonite is not the only authority requiring notice to the record owner of property. La. Const. art. VII, § 25 also requires the tax collector to provide notice to a delinquent taxpayer.[7] In *1177 enacting La.Rev.Stat. 47:2180, the Legislature has established the manner in which notice of delinquencies in immovable property taxes should be provided in compliance with La. Const. art. VII, § 25. At the time of the tax sale, La.Rev.Stat. 47:2180 provided in pertinent part:
§ 2180. Immovable property, notice of delinquency
A. On the second day of January each year, or as soon thereafter as possible, the tax collector shall address to each taxpayer who has not paid all the taxes, which have been assessed to him on immovable property, or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
B. The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor's property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal or domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made.
C. The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all unknown owners of assessed immovable property situated in his parish, and to nonresident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish, or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales.
Thus, under Louisiana law, in order to give property owners reasonable notice so as not to deprive them of constitutionally protected property rights, the tax collector is required to provide "each taxpayer" with written notice, sent by certified mail return receipt requested, alerting each record owner of the immovable property that the owner's failure to pay the taxes within twenty days will result in the sale of the property. In sum, notice is a constitutional requirement, and want of notice is fatal to a tax sale. Adsit v. Park, 81 So. 430, 144 La. 934 (1919).
We turn now to the issue of the validity of the tax sale of the Johnson siblings' immovable property in St. Landry Parish on June 15, 1994. Tax sales are presumed valid, and a tax deed shall be prima facie evidence of validity of the tax sale. La. Const. art. VII, § 25(A). Since at least 1919, however, this court has held that a *1178 sale of property for delinquent taxes is invalid if the tax collector has failed to comply with the legal requirements for giving notice to the tax debtor and, if in consequence, the tax debtor did not have notice prior to the sale. See Adsit, 81 So. at 430-431. The Johnson heirs, therefore, must establish that the tax collector did not take appropriate steps to give notice to the Johnson siblings of possible actions that would affect their property rights. They must show that the sheriff did not respect the due process rights of the co-owners nor the dictates of La.Rev.Stat. 47:2180. We must determine whether the sheriff took reasonable steps to notify each Johnson family co-owner that the 1993 property taxes were delinquent.
First, where the tax debtor's correct address is known and used, certified mail is a reasonable method of notifying the debtor, and it is unnecessary that notice actually be received in order to satisfy due process requirements. Koeppen v. Raz, 29,880 (La.App. 2 Cir. 10/29/97), 702 So.2d 337; Dennis v. Vanderwater, 498 So.2d 1097 (La.App. 3rd Cir.1986). Still, where the mailing of a tax notice is required, and a mailed notice is returned to the tax collector undelivered or unclaimed, the tax collector must take additional reasonable steps to notify the tax debtor of a delinquency. Estate of Willis v. Cairns, 630 So.2d 805 (La.App. 3d Cir.1993).
The requirement that the tax collector take additional reasonable steps to notify a delinquent taxpayer is a longstanding principle. For example, this court has previously held that "when informed that the notice had not been delivered to the tax debtor, the tax collector should have used some diligence to make an effective service of notice; and ... his failure in that respect was fatal to the tax sale." Adsit, 81 So. at 432 (citing McCrory v. Bradford, 57 So. 892, 130 La. 212 (1912)). More significantly, this court has interpreted the Louisiana Constitution to include a similar notice requirement since the adoption of the Louisiana Constitution of 1879. In Hoyle v. Southern Athletic Club, Chief Justice Nicholls stated, "Article 210 of the Constitution [of 1879] in requiring that notice should be given to the taxpayer, evidently contemplated that reasonably diligent steps should be taken to make the notice effectual." 19 So. 937, 48 La.Ann. 879 (La.1896). In the Hoyle decision, the property was assessed in the name of "Estate of J.M. Hoyle" and a notice was addressed by the tax collector to the "Estate of J.M. Hoyle," placed and prepaid in the post office. Id. The notice was held to be insufficient to demonstrate a diligent effort by the collector to notify multiple owners of property. Id. Thus, the requirement that the tax collector take reasonable steps to notify each co-owner of delinquent taxes is not a new or novel legal requirement.
The Johnson heirs argue that the sheriff could easily have found the names and addresses of all of the co-owners by reviewing the conveyance records in the Office of the Clerk of Court. Had he done so, the sheriff would have discovered an August 1993 sale of the fifteen-acre tract of land to Mr. Guillory, which occurred about ten months before the sale for taxes of the fifteen-acre and thirteen-acre tracts. As the Johnson heirs explain, the act of sale for that fifteen-acre property included each co-owner's current name and address, indicating that the necessary information could have been discovered if the tax collector had made an additional inquiry and surveyed the conveyance records for each Johnson sibling listed in the 1977 act of sale by which the Johnson siblings acquired the property for which they owed taxes. The sheriff, however, did not take such additional step because he claimed that any such or other additional step would be unduly burdensome. In *1179 addition, the sheriff contends that an additional step was unnecessary because the sheriff complied with La.Rev.Stat. 47:2180, when he advertised the upcoming tax sale of the property in the local newspaper on three separate occasions, after return of the notices sent to Deola Mae.
To determine the reasonableness of the sheriff's actions, we must examine the method used by the sheriff in his attempt to notify the Johnson siblings. This court's jurisprudence offers some guidance. We have traditionally found that advertisements of tax sales provide insufficient notice, except in the case of unknown owners whose identities are not reasonably ascertainable. Adsit, 81 So. at 432. In addition, the United States Supreme Court specifically addressed the issue of whether advertisements of public sales affecting property owner's rights are sufficient to satisfy due process in Mennonite, 462 U.S. at 799, 103 S.Ct. 2706 and Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In Mullane, the United States Supreme Court stated:
Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed. The chance of actual notice is further reduced when ... the notice required does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard this as more than a feint.
Mullane, 339 U.S. at 315, 70 S.Ct. 652.
More than thirty years later, the United States Supreme Court revisited this issue with regard to public advertisement of tax sales. Mennonite, 462 U.S. at 799, 103 S.Ct. 2706. Expanding on its decision in Mullane, the Court added that notice by publication and posting is "designed primarily to attract prospective purchasers to the tax sale" and, consequently, is "unlikely to reach those who, although they have an interest in the property, do not make special efforts to keep abreast of such notices." Id. As a result, the United States Supreme Court concluded that "notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable." Id. at 800, 103 S.Ct. 2706 (emphasis in original). Thus, the notice of the tax delinquency by publication of an advertisement for an upcoming tax sale, alone, does not pass constitutional muster if the owners of the property can be identified or are easily discovered. A taxpayer, therefore, must also have the opportunity to receive written notice, as a minimum requirement, to ensure protection of the owner's property rights under the Fourteenth Amendment.
In this case, however, the question before this court is whether each of multiple co-owners is entitled to written notice. In the case of co-owners, we hold that the absence of notice to each co-owner is fatal to the tax sale. We find support for our holding today in three previous opinions of this court.
First, this court held in Adsit that the tax collector committed a serious error by failing to address properly the notice of delinquency to the owners of the property. 81 So. at 433. In Adsit, a tract of land owned in indivision by Joe M. Park, Sam Park, A.W. Wilcox, and G.R. Warnsbrough was sold at a tax sale for unpaid taxes. Id. *1180 at 431. The property was assessed in the name of "Park, Wilcox, et al." Id. The notice of delinquency was sent by registered letter addressed to "Park, Wilcox, et al., Beaumont, Texas." Id. Because the letter was returned to the tax collector, he knew that the tax debtors had not received notice of the intended sale. Id. The collector in that case made no further effort to notify the taxpayers. Adsit, 81 So. at 431. In Adsit, the full name of each of the four co-owners of the property was declared in their title deed which had been of record for some ten years before the property was sold for taxes. 81 So. at 431. At that time, the method of notification required the tax collector to provide each delinquent taxpayer with written or printed notice, which was to be sent by registered mail to the residence or place of business of each delinquent taxpayer. See Adsit, 81 So. at 432 citing 1898 La. Acts 170, which became 47:2180 in the Revised Statutes of 1950. This court held that "it is well settled that addressing a notice to one of several joint owners `et al.' is not a compliance with the law, as to other joint owners." Adsit, 81 So. at 432. Concluding that the assessment of the property was not made in the name of the owners of the property and that the owners were not given notice of delinquency, this court declared the tax sale null.
Then, in Le Blanc v. Babin, 197 La. 825, 2 So.2d 225, 231 (1941), this court concluded that the assessment and delinquency notices to the co-owners of property were illegal, null, and void. In Le Blanc, the plaintiffs each owned an undivided one-third interest in property that was sold at a tax sale. Id. at 227. The property was assessed, according to the advertisement and tax deed, in the name of "Burton, Le Blanc, et als., St. Gabriel, La." Id. The plaintiffs argued that the parish was required to assess the property in their proper names. Id. The trial court, however, held that the assessment was legal and valid because the notice was sent by registered mail to "Burton, Le Blanc, et als., St. Gabriel" and receipted by "John Richard, agent." Id. Finding that it is legally required that the property be assessed in the name of the record owner, this court disagreed with the trial court and held that the assessment was "certainly bad as to all the owners save the one named, and possibly so as to him." Le Blanc, 2 So.2d at 228. Contrary to the trial court's ruling, this court determined that the notice of the tax delinquency was not in compliance with the law as it applied to the other joint owners, who were not listed in the assessment. Id. at 229. This court concluded that the tax sale was also a nullity with regard to Burton Le Blanc, the co-owner named in the notice, because no proof existed that Richard, the alleged agent, was authorized to act as agent in any respect related to the plaintiffs' property. Id. In closing, this court warned that "neither the tax collector nor the courts are allowed to disregard the rules prescribed by the statute, and to sell, or maintain sales, for taxes, made in a manner different from that prescribed by law." Id. at 230.
Finally, in Magee v. Amiss, 502 So.2d 568 (La.1987), this court held that a wife, with a legally protected interest in community property acquired by her husband during the course of their marriage and recorded in both their names, was entitled to notice of sale of property, and in absence of notice, she was entitled to a judgment voiding the sale of the property as to her interest in the property. Prior to the sale of the property, a roofing company received a judgment to satisfy a lien on the separated couple's property, and the property was subsequently offered for sale and ultimately sold. Magee, 502 So.2d. at 569. The wife demanded that the sheriff's sale be declared a nullity because she had not received any notice of the sale. Id. at 571. This court concluded that under Mennonite, *1181 alienation of the property without her consent required some notice to her apart from mere publication and advertisement of the sale. Id. at 572. This court emphasized the fact that her interest in the property was apparent on the face of the public records, and concluded that her due process rights were violated by the lack of notice. Id.
Adsit and Le Blanc support our conclusion that each individual co-owner of immovable property owned in indivision must receive to notice of an impending threat of alienation of such property by tax sale for failure to pay taxes. In Magee, we held that a co-owner of community property is entitled to notice under Mennonite if her undivided interest in immovable property is threatened by public auction because such interest is a property right deserving of due process protection under the Fourteenth Amendment. Thus, with regard to the facts of the case before us, we are called upon to draw the next conclusion that each co-owner is entitled to individual written notice of delinquent taxes because alienation by tax sale of immovable property, owned in indivision, without notice to each co-owner deprives the owners of due process. We now apply these decided legal principles to the Johnson heirs' claims.
The Johnson heirs argue that the practice of the St. Landry Parish Assessor's Office, which allows the sheriff as tax collector to notify only one owner per immovable property regardless of the number of co-owners readily identifiable, violated their ascendants' rights as co-owners of the immovable property under the Fourteenth Amendment. In this case, only one co-owner was sent noticeDeola Mae. The other co-owners were not notified, and testimony from the Chief Deputy Assessor indicates that, even if each co-owner had requested notification of delinquent taxes, the assessor would have continued to send notice to only one co-owner. This practice by the assessor and the sheriff deprived Deola Mae's siblings of notice. Considering this court's comment in Adsit concerning the potentially fatal use of "et al.," the notice was facially deficient because it was addressed and sent to "Johnson, Matthew, et als. c/o Deola Mae James, 4020 Ave. M., Galveston, TX, 77550." Furthermore, no other co-owner received notice, thereby delivering the fatal blow to the tax sale. As a result, the tax collector did not afford due process protection to Deola Mae's co-owners of the property.
Plaintiff Lewis, however, alleges that Deola Mae was an authorized representative for each co-owner. As support for this position, he relies upon two factors. First, he states that the notices had been prepared in this manner for at least sixteen years, and each year until 1993, the taxes had been paid. Second, Lewis explained that the practice of the St. Landry Parish Assessor's Office is to provide notice to the first record owner listed on the deed of the property, and in this case, he states that the deed listed Matthew Johnson, not Deola Mae Johnson James, as the first record owner. He contends that since Deola Mae James is the designated recipient of correspondence, the Assessor's Office has illustrated that there must have been an agreement between and among the co-owners to have Deola Mae appointed as the representative of the siblings with regard to this property. Otherwise, absent an instruction to send notice elsewhere, in Lewis's view, the Assessor would have sent the notice to Matthew Johnson, the vendee listed first in the act of sale.
The question then is whether Deola Mae's siblings made her a designated mandatary with regard to the property. A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal. La. Civ. *1182 Code art. 2989. While a contract of mandate is not required to be in any particular form, the existence of a mandate must be substantiated by evidence indicating that the principal authorized the mandatary to act on his behalf. La. Civ.Code art. 2993. The question of mandate/agency is basically a factual determination. Self v. Walker Oldsmobile Co., Inc., 614 So.2d 1371 (La. App. 3rd Cir.1993). The essential test to determine whether implied agency exists is whether the principal has the right to control the conduct of the agent and whether the agent has the right and authority to represent or bind the principal. Anderson Windows and Patio Co., Inc. v. Dumas, 560 So.2d 971 (La.App. 4 Cir. 1990).
Lewis has not presented any testimony or other proof indicating that the Johnsons' authorized Deola Mae to act as a mandatary in this situation. Moreover, Lewis's position cannot be proven or disproven by the parties to the mandate, the Johnsons, because Deola Mae and her three siblings were deceased when Lewis petitioned to quiet title and had left no written evidence regarding the existence of a mandate. Without any such proof and because it cannot simply be assumed, there is no proof of a designation of Deola Mae as an agent or mandatary under a contract of mandate.
We, therefore, conclude that the absence of notice of tax delinquency and subsequent tax sale offended Deola Mae's co-owners rights to due process. Written notice to one co-owner cannot be imputed to other co-owners. While the sheriff did follow the advertising procedure detailed in La.Rev.Stat. 47:2180, the advertisement in the local newspaper, even if otherwise complete, is an inadequate substitute for written notice to each co-owner. The sheriff is required to take additional reasonable steps to ascertain the names and addresses of each co-owner. The circumstances of the case demonstrate the reasonableness of the additional steps the tax collector might have taken. In this case, the circumstances indicate that a simple search of the conveyance records would have revealed the addresses of the co-owners. We, therefore, determine that Deola Mae's co-owners were not afforded sufficient notice to protect their rights to due process. Consequently, the tax sale was null and void.
In a separate and distinct legal issue, we have to decide whether the sale was rendered null and void with regard to Deola Mae Johnson James's own interest in the property. While we have in this opinion concluded that the lack of notice received by Deola Mae's siblings provided grounds to invalidate the sale, the question remains whether Deola Mae Johnson James's interest has been divested, considering that contrary to what did not take place regarding Deola Mae's siblings, the tax collector did take steps to send notice to Deola Mae. The issue, of course, is whether these steps were sufficient to satisfy the minimum requirements set forth in Mennonite and our statutory law as well.
In Mennonite, the United States Supreme Court held that "notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party." 462 U.S. at 800, 103 S.Ct. 2706 (emphasis in original). Furthermore, in Mullane, the United States Supreme Court established that "an elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." 339 U.S. at 314, 70 S.Ct. 652.
*1183 The Legislature also requires the tax collector to provide written notice to the taxpayer. La.Rev.Stat. 47:2180(B). The Legislature has determined that when a written notice to a known owner is returned because it is undeliverable, the same method used to provide notice to an unknown owner may be used as an additional method to attempt notification of the known owner. The Legislature has recited in La.Rev.Stat. 47:2180(B), which permits the tax collector to utilize subsection (C) "in the event the certified notice is returned as being undeliverable by the post office." By adopting this provision, the Legislature has told the tax collector, he may supplementally publish an advertisement in a newspaper by "address[ing] to all unknown owners of assessed immovable property situated in his parish, and to nonresident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll." La.Rev.Stat. 47:2180(C)(emphasis added). Therefore, the general scheme adopted by La.Rev. Stat. 47:2180 apparently intended to treat the process for notification of a known owner, whose mailed notice is undeliverable, in the same manner as an unknown owner, i.e., notice by publication. Thus, we consider a publication in accord with La.Rev.Stat. 47:2180(C) as an adequate notification to the known owner, as to whom mail is undeliverable, if the publication identifies each such owner and the property in the advertisement for the tax sale.
In our case, the sheriff on three separate occasions sent notice by registered mail to Deola Mae James, but on each occasion, the notice was returned "unclaimed." At trial, the Johnson heirs admitted that the Galveston address on the unclaimed notice sent by the sheriff was Deola Mae Johnson James's correct address in 1994 at the time he sent the notices, published the advertisement, and held the tax sale. After the attempts to notify Deola Mae Johnson James through registered mail failed, the sheriff advertised in The Daily World newspaper, which is permitted by La.Rev.Stat. 47:2180. In order to ascertain the sufficiency of notice, we must determine whether the publication in The Daily World provides adequate notice to the owner, whose name was known to the sheriff, after the required registered mail was returned unclaimed.[8]
By publishing the advertisement of the upcoming tax sale, the sheriff took this additional step to notify Deola Mae Johnson James. The advertisement, however, did not identify Deola Mae Johnson James, nor her siblings. Instead of listing each co-owner, and with no clear identification of Deola Mae Johnson James, the advertisement regarding at least thirty-one distinct properties up for sale at this tax sale included the following:
01 05087000.00 JOHNSON, MATHEW, ET ALS C/O DEOAAS VM VT TAXES OWED ARE 45.37 WITH INTEREST AN D 15.00 AC N PRUDENTIALS S COURVILLE E W PREIS-609226 (Y-20-511)

*1184 01 05087500.00 JOHNSON, MATHEW, ET ALS C/O DEOLA M E AENXO TAXES OWED ARE 64.00 WITH INTEREST ASOED 13 AC IN SEC 14 T-7S R-3E LOT 2 611185 (0 [verbatim]
In addition to failing to list each co-owner of the property individually and adequately, it appears that the advertisement regarding the properties, presumably the thirteen-acre tract and the fifteen-acre tract, actually did not identify Deola Mae Johnson James or her co-owner siblings. Rather, the tax debtor is identified as "JOHNSON, MATHEW, ET ALS C/O DEOAAS" and "JOHNSON, MATHEW, ET ALS C/O DEOLA M E AENXO." The advertisement, therefore, fails to comply with La.Rev.Stat. 47:2180(C), which requires that the publication be directed to all owners of the property. This advertisement is a prime example of the type of publication about which the Supreme Court warned in Mullane, when it said that "the notice ... does not even name those whose attention it is supposed to attract, and does not inform acquaintances who might call it to attention." Mullane, 339 U.S. at 315, 70 S.Ct. 652.
Under these circumstances, we find that the sheriff attempted to take additional steps to notify the tax debtor, perhaps Deola Mae Johnson James and her sibling co-owners, of the delinquent taxes and the impending tax sale by publishing an advertisement in the local newspaper. The advertisement, however, was not written in a manner that could apprise Deola Mae Johnson James of the pendency of the tax sale nor afford Deola Mae Johnson James an opportunity to present her objections. Thus, we conclude that Deola Mae Johnson James did not receive sufficient notice that complied with La.Rev.Stat. 47:2180, and that renders the tax sale null and void as it pertains to Deola Mae Johnson James's interests in the property.

CONCLUSION
For the reasons assigned, we find that a tax collector is required to provide each co-owner owning property in indivision with another or others, with actual notice or written notice of delinquency sent by registered mail. Furthermore, under the facts of this case, the Sheriff did not provide written notice under La.Rev.Stat. 47:2180 to three of the Johnson siblings. By failing to do so, the Sheriff infringed upon the Johnson siblings' rights to due process guaranteed by the United States Constitution. The tax sale, is therefore, null and void as it pertains to Matthew Johnson, Sr., Myrtle Johnson Franklin, and Aaron Perry Johnson, Sr. Additionally, the advertisement, which would have been an additional reasonable step to notify Deola Mae Johnson James if in proper form, was insufficient for the reasons cited hereinabove so the tax sale as it relates to Deola Mae Johnson James was null and void. There was insufficient notice to the three siblings and to Deola Mae Johnson James, failing, as those notices did, to meet the minimum constitutional requirements concerning notice.

DECREE
We reverse the judgment of the Court of Appeal. We declare the tax sale to plaintiff, Gabriel Lewis, an absolute nullity with regard to Matthew Johnson, Sr., Myrtle Johnson Franklin, Deola Mae Johnson James and Aaron Perry Johnson, Sr.'s individual one-fourth interests in the property. We, therefore, annul the tax sale.[9]
REVERSED.
NOTES
[1] The immovable property consisted of a thirteen-acre piece of land in Section 14, T-7-S, R-3-E, designated as "Tract 2" in St. Landry Parish.
[2] Not only does the record not indicate why Deola Mae was the only sibling notified, but there was no testimony or other proof concerning the reason for this exclusion of the other siblings. Testimony from the Johnson siblings was not available when the case was tried because none of the four, Deola Mae or her three siblings, survived.
[3] A photocopy of the advertisement purchased by the Sheriff is included in the record and is reproduced below:

PUBLIC NOTICE
LEGAL NOTICE TAX SALE OF IMMOVABLE PROPERTY
TAX DEBTORS AND NOTICE OF MORTGAGE CREDITORS
STATE OF LOUISIANA
VS.
DELINQUENT TAX DEBTORS
PARISH OF ST. LANDRY LOUISIANA
By virtue of authority vested in me by the constitution and laws of the State of Louisiana, I will sell at the principal front door of the Court House in which the civil district court of said parish is held, at the legal hour for judicial sales beginning at 10:00 a.m. on Wednesday, June 25, 1994, continuing on each succeeding day until said sales are completed, immovable taxes are now due to the State of Louisiana and Parish of St Landry, and Levee District, to enforce collection, assessed in the year 1993 from the 31st of December, 1993, at the rate of fifteen percent per annum until paid and costs.... 01 05087000.00 JOHNSON, MATHEW, ET ALS C/O DEOAAS VM VT TAXES OWED ARE 45.37 WITH INTEREST AN D 15.00 AC N PRUDENTIALS S COURVILLE E W PREIS-609226 (Y-20-511)
01 05087500.00 JOHNSON, MATHEW, ET ALS C/O DEOLA M E AENXO TAXES OWED ARE 64.00 WITH INTEREST ASOED 13 AC IN SEC 14 T-7S R-3E LOT 2 611185 (0
[verbatim]
[4] The Johnson heirs argue that the sheriff erroneously applied this payment to the fifteen-acre tract instead of the thirteen-acre tract. We need not ascertain whether the Johnson heirs' contention in this regard is correct. Whether true or not, that has no bearing on our resolution of this case.
[5] The Johnson heirs contend that a simple search in the conveyance records would have provided the names and addresses of all of the co-owners.
[6] The Fourteenth Amendment to the United States Constitution states:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
[7] In pertinent part, La. Const. art. VII, § 25(A) states:

(A) Tax Sales. (1) There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due (emphasis added).
[8] We note that La.Rev.Stat. 47:2180 and La. Rev.Stat. 47:2181 contemplate two different types of publications. La.Rev.Stat. 47:2180 addresses the publication of the notice of delinquency while La.Rev.Stat. 47:2181 addresses the publication of the advertisement for sale, which is to occur twenty days after notice of delinquency is given. It appears that the sheriff was actually attempting to provide notice under La.Rev.Stat. 47:2181 because the advertisement followed the form set forth therein when the advertisement was published in The Daily World. We address both statutes, however, because regardless of the notice provided, both La.Rev.Stat. 47:2180(C) and 47:2181 require that the property be addressed in the name of the person or persons who at the time the assessment was made appeared to be the owners of the assessed immovable property.
[9] We annul the tax sale subject of course to La. Const. art VII, § 25(C), and its included provision: "no judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser," Gabriel Lewis.