965 So.2d 873 (2007)
JAMIE LAND CO., INC.
v.
Dolores TOUCHSTONE, Wife of/and Kermit ATWOOD.
No. 2006 CA 2057.
Court of Appeal of Louisiana, First Circuit.
June 8, 2007.
Rehearing Denied July 9, 2007.
John A.E. Davidson, Mark Morovich Bonura, Metairie, Counsel for Plaintiff/Appellant Jamie Land Co., Inc.
Vanessa C. LaFleur, Deborah L. Crain, Deidra LaNella Johnson, Baton Rouge, Counsel for Defendant/Appellee Louisiana Tax Commission.
Gary Paul Duplechain, Slidell, Counsel for Defendants/Appellees Dolores Touchstone Atwood, Kermit Atwood, and St. Tammany Parish Assessor, Patricia Schwarz Core, Tax Assessor.
Before: PETTIGREW, DOWNING and HUGHES, JJ.
*874 DOWNING, J.
Jamie Land Co., Inc. (Land) brought an action against Dolores Touchstone, her husband Kermit Atwood, and the Louisiana Tax Commission (LTC), seeking to quiet title to property in St. Tammany Parish. Land acquired the property from a company that had bought it at a tax sale. Subsequently, the LTC annulled the tax sale. On cross motions for summary judgment, the trial court denied Land's motion, granted the LTC's motion, declared the tax sale null and void, and declared that title to the property rests with the Atwoods. Judgment was signed accordingly.
Land appealed, alleging that the court disregarded La. Constitution Art. 7 § 25, which provides that no tax sale of property shall be set aside except on proof of payment of taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. Land also alleges that the court erred in annulling its title absent a specific filing of a petition to annul the tax sale.
For the following reasons, we affirm the trial court judgment.

BACKGROUND AND PROCEDURAL HISTORY
The property in question is the Atwoods' personal home. Prior to 1996 no tax had ever been assessed on the property due to their homestead exemption. In 1996 a tax bill assessment in the amount of $1.63 was sent to an obsolete rural route address. The Atwoods never received notice that taxes were due on the property even though they were still living on the property. The Assessor made no further effort to notify the Atwoods other than running an advertisement in the newspaper. The taxes remained unpaid. On June 24, 1997 the property was sold at a tax sale for the $1.63 taxes due, plus 10 cents interest and $125.00 in costs associated with the sale. The Atwoods were unaware the property had been sold, and they continued to reside there.
At some point the Atwoods discovered that the property had been sold at the tax sale.[1] They notified the tax assessor, who arranged for the error to be cured as discussed below. On August 4, 2000, the LTC cancelled the tax sale pursuant to La. R.S. 39:351 and 47:1991. The LTC also directed the St. Tammany Parish Recorder of Mortgages to correct the mortgage records.
On August 9, 2000, just over three years after the tax sale, Land filed an action to confirm and quiet title to the property and to evict the Atwoods. On March 28, 2002, the LTC was added as a defendant. On opposing motions for summary judgment, the trial court ruled in favor of defendants and declared the tax sale null and void. Land appealed.

DISCUSSION
In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Cressionnie v. Intrepid, Inc., 03-1714, p. 3 (La.App. 1 Cir. 5/14/04), 879 So.2d 736, 738.
Land argues in its first assignment of error that the Atwood's right to redeem the property was lost once the three-year period following the tax sale recordation had lapsed. At that point, citing Meares v. Pioneer Production Corp., 382 So.2d 1009, 1017 (La.App. 3 Cir.1980), Land argues that a tax debtor's only recourse is to file suit and attempt to annul the sale. Land *875 further argues that the tax debtor is the proper party to bring an action to annul the tax sale and not the LTC.
First it is settled that a claim of absolute nullity can be raised as an affirmative defense. In Cressionnie, 03-1714 p. 4, 879 So.2d at 739, the court clearly ruled that when a tax purchaser sues to quiet title a tax title, that title is put at issue, and the former owner may avail himself of any defense sufficient to defeat the tax title.
Further, Louisiana law however, provides alternative procedures for annulling tax sales in certain circumstances. La. R.S. 47:1837(C) provides that the LTC shall make the necessary inspections, investigations, and studies for the adequate administration of its responsibilities. It specifically provides that in performance of these duties the tax commission shall authorize and direct the collector to correct the assessment on its rolls and the recorder of mortgages to change the inscription of tax mortgages pursuant to La. R.S. 39:351[2] and La. R.S. 47:1991.[3]
Here, it is uncontradicted that the tax debtor did not receive notice of the tax sale due to an incorrect address even though the correct address was readily ascertainable.
Due process requires that the property owner be properly notified before property can be sold for taxes. If notice requirements are not followed, the sale is null and void, or an absolute nullity. See Lewis v. Succession of Johnson, 05-1192 (La.4/04/06), 925 So.2d 1172 and Drury v. Watkins, 546 So.2d 1280 (La.App. 1 Cir. 1989).
In Lewis the court recognized that the requirement that the tax collector take additional reasonable steps to notify a delinquent taxpayer is a longstanding principle and that the tax collector is required to use some diligence to make an effective service, and the failure to do so is fatal to the sale. Lewis, 05-1192 p. 8-9, 925 So.2d at 1177-78. In Drury the court ruled that *876 when a notice is returned unclaimed, the tax official cannot sit back and do nothing, but has a duty to try to notify the property owner. Failure to do so makes the tax sale null and void. Drury, 546 So.2d at 1286.
Both Lewis and Drury rely on Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), in rendering the conclusions. In Mennonite, which was decided after the Meares decision, the U.S. Supreme Court declared that notice by mail or other means is a minimum constitutional precondition to a proceeding that will adversely affect liberty or property interest of any party. Id., 462 U.S. at 800, 103 S.Ct. 2706. The Court further ruled that posting a newspaper notice to the property owner, is not a reasonable means to send notice of a pending tax sale, and that personal service or mailed notice is constitutionally required if such is reasonably ascertainable. Id. at 462 U.S. at 799, 103 S.Ct. 2706.
In support of its arguments Land asserts that pursuant to La. R.S. 47:1991, the property owner, and not the LTC, is the rightful party to initiate this proceeding. Land also maintains that LTC had no such authority to cancel the tax sale without a hearing. Land further argues that the Assessor's application to cancel the sale was deficient because there was no affidavit by the tax debtor.
As indicated above, however, La. R.S. 39:351 also provides a procedure by which the LTC can authorize the recorder of mortgages to cancel a sale. Here, based on the uncontradicted affidavits and evidence, the LTC made a determination that the employment of an obsolete address resulted in an erroneous assessment. The LTC then ordered the cancellation of the tax sale of the property. Whether the LTC was in compliance with La. R.S. 47:1991 is unimportant, because we conclude that the LTC did adequately comply with La. R.S. 39:351. Here, pursuant to its duties under La. R.S. 47:1837(C), the LTC made a determination, based on affidavits and other competent evidence that the employment of the Atwoods' obsolete address resulted in an erroneous assessment. The LTC then ordered the cancellation of the tax sale and the correction of the records pursuant to the statute.
Land additionally contends that our Constitution does not provide for "cancellations" and that any "legislative creation" authorizing such a right is inconsistent with the Constitution. Land argues that a statute cannot lawfully authorize the cancellation of a tax sale once the three-year redemptive period has tolled.
In this regard, Article 7, Section 25 of the Louisiana Constitution, entitled Tax Sales, provides as follows in pertinent part:
(A) (1) There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector, without suit, and after giving notice to the delinquent in the manner provided by law, shall advertise for sale the property on which the taxes are due. . . . A tax deed by a tax collector shall be prima facie evidence that a valid sale was made.
* * * * * *
(B) Redemption. (1) The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs,. . . .
* * * * * *
(C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. *877 A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that the part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.
As we discussed above, however, tax sales without notice to the tax debtor are absolute nullities. Lewis 05-1192, p. 22, 925 So.2d at 1184. Black's Law Dictionary, (8th ed. p. 1098) defines "absolute nullity" as an act that is void because it is against law and cannot be cured. Our courts have defined an absolute nullity as "an act in a cause which the opposite party may treat as though it had not taken place, or which has absolutely no legal force or effect." (Emphasis added.) Bordelon v. Medical Center of Baton Rouge, 03-0202, p. 6 n. 4 (La.10/21/03), 871 So.2d 1075, 1080 n. 4. The time limitations set forth in our Constitution do not affect a tax sale that was already an absolute nullity. The failure to adhere to the Mennonite due process requirements was fatal to this sale. Lewis, 05-1192, p. 10, 925 So.2d at 1178. Accordingly, since the tax sale was of no legal force or effect, there was nothing to nullify. Therefore, Art. 7 § 25 of the Louisiana Constitution is not implicated. Recognition of an absolute nullity is, definitionally, not the same as nullifying a sale.
Land next argues that its due process rights were violated when the LTC did not give it, the tax deed owner, notice before canceling the sale. We disagree. Land was not without remedy. While it argues that its due process rights were violated, it did exercise its right to due process by bringing this action to quiet title the property.
Accordingly, for the above reasons we conclude that the LTC did not err in finding that an incorrect address to the tax debtor resulted in an "erroneous assessment" and setting aside the tax sale. Further, the trial court did not err in declaring the tax sale null and void ab initio. Appellant's assignments of errors are without merit. We therefore conclude that the trial court did not err in entering summary judgment dismissing the petition for the reasons stated and recognizing that the title of the subject property rests with the Atwoods.[4]

DECREE
The trial court judgment is affirmed. All costs of this appeal are assessed to petitioner Jamie Land Co., Inc.
AFFIRMED.
PETTIGREW, J., dissents, and assigns reasons.
PETTIGREW, J., dissenting.
I respectfully dissent from the majority.
I am of the humble opinion that the majority has misinterpreted La. R.S. *878 39:351 and La. R.S. 47:1991. Whatever power and authority is granted to the Louisiana Tax Commission ("LTC") in these statutes is controlled by, limited by, and subservient to the authority granted in Louisiana Constitution art. VII § 25, dealing with Tax Sales.
The majority in its opinion refers to this case as being one of erroneous assessment. It is not. The issue in this case is one of alleged lack of notice by the taxpayer of an accurate tax assessment. Neither La. R.S. 39:351 nor La. R.S. 47:1991 deals with lack of notice to the taxpayer. In fact, the statutes do not even mention the phrase "lack of notice of the taxpayer."
Under paragraph B of Louisiana Constitution art. VII § 25, the property sold shall be redeemable for three years after the date of recordation of the tax sale. The article further states in subparagraph C, "No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale." This article uses the phrase "shall," which is mandatory. This article grants the sole power and authority to the courts to annul the sale after the redemption period has expired. Whether the taxpayer received notice of the assessment and whether the sale should be annulled is a function and power of the courts, not the LTC.
In my humble opinion, La. R.S. 39:351 and La. R.S. 47:1991 sets up a procedure whereby the taxpayer, the assessor, and the LTC may correct an erroneous assessment, double assessment, or an assessment that is a clerical error. It gives the taxpayer an opportunity to avoid being overassessed for his taxes on his property. Our case at hand does not raise such an issue. The taxpayer in this case questioned whether he was notified of the assessment. This could have been corrected by the assessor and the LTC if it had been done within the redemption period. However, once the time frame for the redemption period had expired, it is my opinion that it must be done by the courts in a suit to annul, whether in an original suit or a reconventional demand. Let us note that the last sentence of Louisiana Constitution art. VII § 25A(1) provides "A tax deed by a tax collector shall be prima facie evidence that a valid sale was made."
In my humble opinion, this case was a procedural nightmare. Jamie Land Co., Inc. ("Land"), through its original petition to confirm and quiet title to real estate; its first supplemental and amending petition; and its second supplemental and amending petition, made the following individuals and or entities defendants: Dolores Touchstone, wife of/and Kermit Atwood ("Atwoods"); the LTC; and Assessor for the Parish of St. Tammany ("Assessor"). The LTC answered, as did the Atwoods. The Atwoods, in their answer, raised the affirmative defense of lack of notice of the assessment and tax sale. I agree with the majority that a claim of absolute nullity can be raised as an affirmative defense. Cressionnie v. Intrepid, Inc., XXXX-XXXX, p. 3 (La.App. 1 Cir. 5/14/04), 879 So.2d at 739. By virtue of their answer, the Atwoods have preserved their claim of absolute nullity of the tax sale. Subsequent to this, Land files a motion for summary judgment against the LTC and the Atwoods. The LTC files a motion for summary judgment against Land, based upon the lack of notice to the Atwoods. The Atwoods do not file their own motion for summary judgment based upon the lack of notice as required by Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). In fact, at the hearing on the motion for summary judgment, on December 20, 2005, the attorneys for the Atwoods specifically state "I am not actually involved in the motion for summary *879 judgment, although I am supporting the position of the Tax Commission." From a procedural standpoint, the only matters before the trial court was a summary judgment by Land against the LTC and the Atwoods, and the summary judgment motion by the LTC against Land. Land was not entitled to summary judgment against the Atwoods because Land, in its own petition, admits the Atwoods did not get notice of the tax assessment and tax sale. The LTC is not entitled to summary judgment because once the redemption period (as provided in Article VII § 25B) passed, the LTC no longer had power and authority to cancel the tax sale and, therefore, had no standing. The only parties at this stage of the proceeding that had standing for the relief to cancel the tax sale are the Atwoods, and they had no pending motion. In my humble opinion, the majority's decision would grant carte blanche authority to the LTC without notice to anyone else to cancel tax sales for the past 100 years. I would therefore reverse the trial court's judgment in favor of the LTC and remand this matter to the trial court for further proceedings through either a trial on the merits and or by subsequent summary judgment motions, to determine the issue of notice or lack thereof to the Atwoods.
NOTES
[1] There is no evidence in the record indicating how the Atwoods learned of the tax sale.
[2] La. R.S. 39:351, entitled Cancellation of Erroneous Assessments, provides the following:

The Tax Commission, upon determination and notification to the parish or district collector of taxes that an assessment has been corrected, shall authorize and direct the recorder of mortgages of the appropriate parish or parishes to change the inscription of the tax mortgage. If property erroneously assessed has been sold for taxes and adjudicated to a third party, the Tax Commission shall authorize and direct the recorder of mortgages to cancel the sale. However, if the property has been bid for in adjudication to the state, the register of the state land office shall cancel the sale upon his records and direct the appropriate recorder of mortgages to cancel the act or deed of adjudication upon his records.
[3] Louisiana Revised Statute 47:1991 entitled Cancellation of Erroneous Assessments, provides:

A. Upon a statement of the facts made under oath, verified and approved by the assessor of the parish or district in which the property is situated, that the assessment is a clerical error, or an erroneous or double assessment, or that the property is exempt by the Louisiana Constitution from taxation, the affidavit being accompanied by the rendition made by the taxpayer on such property for the current year, where the affidavit explains the clerical error; shows in detail the erroneous assessment; and shows the assessment number in the double assessment; the Tax Commission shall authorize and direct the collector to correct the assessment on the roll on file in his office. Additionally, when such notification is issued, the Tax Commission shall authorize and direct the recorder of mortgages to change the inscription of the tax mortgage.
B. * * *
C. In case property erroneously assessed has been sold for taxes and adjudicated to a third party, the Tax Commission auditor shall authorize and direct the recorder of mortgages to cancel the sale. . . . .
[4] We do not conclude that a purchaser of property at a tax sale can never assert ownership of property for which inadequate notice has been provided to the tax debtor. However, claims based on acquisitive prescription, when appropriate, or other legal bases, are not presented here. Therefore, we specifically do not analyze or decide such claims.