JOY COSSICH LOBRANO, Judge.
| iPlaintiff, Allied Tax Fund, L.L.C. (“Allied”), appeals a district court judgment *526 upholding the validity of the November 12, 2003 tax sale by the City of New Orleans (“the City”) to Clyde Naquin of immovable property located at 1814 Magazine Street. For the reasons that follow, we reverse.
Allied acquired the property at issue at a tax sale conducted by the City on November 18, 2002, after the record owner of the property, Chin Hong Bow & Co., Inc. (“Chin Hong Bow”), failed to pay the 2001 property taxes. Following the tax sale, the City tax collector executed a tax deed on August 14, 2003, transferring to Allied all of Chin Hong Bow’s right, title and interest in the property for non-payment of 2001 property taxes. The tax deed, which specifically listed Allied’s address as P.O. Box 281863, Atlanta, GA 30384, was recorded in the Orleans Parish Conveyance Office on October 30, 2003.
In the meantime, after the 2002 property taxes were not paid on the property, the City, in August 2003, sent a notice of an upcoming tax sale to Chin Hong Bow, who, at the time, was still listed as the record property owner. The certified |2returned receipt of the notice was signed by Dixie Chin and dated August 21, 2003. The City also advertised the upcoming tax sale in the Times-Picayune newspaper on October 8, 2003, and then again on November 5, 2003. As previously mentioned, Allied’s tax deed was recorded on October 30, 2003, between the first and second published advertisements.
Shortly thereafter, Naquin purchased the property at a tax sale conducted by the City on November 12, 2003, for non-payment of 2002 property taxes. Following the tax sale, the City tax collector executed a tax deed oh April 5, 2004, transferring to Naquin all of Chin Hong Bow’s right, title and interest in the property for non-payment of 2002 property taxes. Naquin’s tax deed was recorded in the Orleans Parish Conveyance Office on April 20, 2004. Since acquiring the property, Naquin has continued paying the property taxes.[1]
On November 13, 2007, pursuant to then La. R.S. 47:2228[2], Allied filed a Petition to Quiet Tax Title and Annul Tax Sale, seeking to confirm itself as owner of the property and to invalidate the November 12, 2003 tax sale to Naquin. Allied argued that it had not received proper notice of the upcoming tax sale as required under La. Const. Art. VII, § 25[3]. Naquin an *527 swered the petition, claiming he had | svalid title to the property. He argued that Allied was not entitled to actual notice of the upcoming tax sale because Allied was not the record property owner when the City mailed the delinquency notices in August 2008. He also argued that the City’s two published notices of the upcoming tax sale in the Times-Picayune satisfied the notice requirements of La. Const. Art. VII, § 25, as Allied’s identity as the property owner was not reasonably ascertainable from the public records.
Following a hearing, the trial court rendered a judgment, declaring valid the November 12, 2003 tax sale of the property to Naquin and divesting Allied of its ownership in the same. In reasons for judgment, the trial court stated:
The Court finds that because Allied’s identity was not reasonably ascertainable from the public records at the time for giving notice, constructive notice via publication was sufficient to protect Allied’s due process Rrights and the tax sale of 1814 Magazine Street, New Orleans, LA to Clyde Naquin is valid and upheld. See Mennonite Board of Missions v. Adams, 462 U.S. 791 [103 S.Ct. 2706, 77 L.Ed.2d 180] (1983).
On appeal, Allied urges this Court employ a de novo standard of re-view on the basis that the trial court erred as a matter of law in failing to annul the tax sale due to a violation of its right to due process under the federal and state constitutions. Generally, appellate courts review both facts and law under the manifestly erroneous or clearly wrong applicable standard of review. See S.J. v. Lafayette Parish School Board, 2009-2195, p. 13 (La.7/6/10), 41 So.3d 1119, 1128. In this case, we are not presented with an incorrect application of the law. Rather, we are presented with a purely factual issue; namely, whether the trial court erred in finding, as a factual matter, that Allied’s identity as the property owner was not reasonably ascertainable from the public records at the time of giving notice and thus constructive notice via publication was sufficient to protect Allied’s due process requirements established by Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983) and its progeny. As such, we review this matter under a manifest error/clearly wrong standard.
“Under the Fourteenth Amendment to the United States Constitution and La. Const. Art. I, § 2, a person is protected against a deprivation of his life, liberty or property without ‘due process of law.’ ” Hamilton v. Royal International *528 Petroleum Corporation, 2005-846, p. 9 (La.2/22/06), 934 So.2d 25, 32 (citation omitted). The fundamental requirement of procedural due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner. Id.
In Mennonite Board of Missions v. Adams, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the U.S. Supreme Court interpreted the Due Process Clause 15with respect to the rights of a mortgagee and the notice requirements of an Indiana statute. In that case, the Mennonite Board of Missions (“Mennonite”) was the mortgagee of record of a certain parcel of property. The property owner failed to pay her taxes and the property was sold at a tax sale. Indiana law did not require that notice be given, by mail or personal service to a mortgagee and Mennonite was not given any notice of the impending tax sale.[4] Relying on its earlier decision in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Supreme Court held that “a mortgagee possesses a substantial property interest that is significantly affected by a tax sale” and therefore “is entitled to notice reasonably calculated to apprise him of a pending tax sale.” Mennonite, 462 U.S. at 798, 103 S.Ct. at 2711. Regarding the publication of notice of the impending tax sale in a newspaper and the posting of notice in the county courthouse, the Court stated:
When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee’s last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the inandate of Mullane.
Id. (Footnote omitted). The Court further held that:
Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable. Furthermore, a mortgagee’s [ ^knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending.
Id., 462 U.S. at 800, 103 S.Ct. at 2712 (emphasis in original).
We now consider whether the November 12, 2003 tax sale to Naquin was valid.
La. Const. Art. VII, § 25 requires that prior to conducting a tax sale of property for nonpayment of taxes, the city must give notice to the delinquent owners in the manner provided by law. At the time of the tax sale in question, former La. R.S. 47:2180[5] provided the manner of *529 giving notice to delinquent |7owners re *530 garding immovable property. “Thus, under Louisiana law, in order to give property owners reasonable notice so as not to deprive them of constitutionally protected property rights, the tax collector is required to provide ‘each taxpayer’ with written notice, sent by certified mail return receipt requested, alerting each record owner of the immovable property that the owner’s failure to pay the taxes within twenty days will result in the sale of the property.” Lewis v. Succession of Johnson, 2005-1192, p. 8 (La.4/4/06), 925 So.2d 1172, 1177. “[N]otice is a constitutional requirement, and want of notice is fatal to a tax sale.” Id., pp. 8-9, 925 So.2d at 1177 (citing Adsit v. Park, 144 La. 934, 81 So. 430 (1919)).
|sIn Lewis, supra, the Louisiana Supreme Court considered whether the practice of the St. Landry Parish Assessor’s Office, which allowed the sheriff, as tax collector, to send notice of the delinquent taxes and upcoming tax sale to only one co-owner of immovable property owned with others in division, regardless of the number of co-owners readily identifiable, violated the other co-owners’ rights under the Fourteenth Amendment. Reviewing the notice requirement established in Mennonite, supra, the Court stated:
[T]he notice of the tax delinquency by publication of an advertisement for an upcoming tax sale, alone, does not pass constitutional muster if the owners of the property can be identified or are easily discovered. A taxpayer, therefore, must also have the opportunity to receive written notice, as a minimum requirement, to ensure protection of the owner’s property rights under the Fourteenth Amendment.
Lewis, 2005-1192, p. 12, 925 So.2d at 1179 (emphasis added). The Court concluded that written notice to one co-owner cannot be imputed to other co-owners. The Court determined that while the sheriff did follow the advertising procedure set forth in La. R.S. 47:2180, the advertisement in the local newspaper was an inadequate substitute for written notice to each co-owner. The Court concluded that “the sheriff is required to take additional reasonable steps to ascertain the names and addresses of each co-owner” and emphasized that “the circumstances of the case demonstrate the reasonableness of the additional steps the tax collector might have taken.” Id. at 17, 925 So.2d at 1182. There, the Court found the circumstances were such that a simple search of the conveyance records would have revealed the addresses of the other co-owners. Because the sheriff made no attempt to ascertain the names and addresses of the other co-owners, the Court determined the other co-owners were not afforded sufficient | ^notice to protect their rights to due process and, thus, the tax sale was null and void. Id.
In the instant case, the trial court upheld the validity of the tax sale to Naquin “because Allied’s identity was not reasonably ascertainable from the public records at the time for giving notice, [thus] constructive notice via publication was sufficient to satisfy Allied’s due process rights.” After reviewing the record, we find the trial court clearly erred in its finding.
At the trial, the parties jointly stipulated that Allied purchased the property at a tax sale conducted by the City on November 18, 2002[6], and that the City never sent Allied written notice of the 2002 tax delinquency and the upcoming tax sale. The *531 parties further stipulated that the City tax collector had executed Allied’s tax deed for the November 18, 2002 tax sale on August 14, 2003. Given that the City tax collector executed the tax deed with full knowledge of Allied’s identity and address at that time, even though the tax deed was not yet recorded, we find the City tax collector could have reasonably identified Allied as the owner of the property to send it timely written notice of the 2002 tax delinquency and upcoming tax sale had it taken any steps to do so. Because the record contains no evidence that the City tax collector took any steps to ascertain Allied’s identity as the correct owner of the property, we find the notification of the tax delinquency and upcoming tax sale by publication in the Times-Picayune was not sufficient to protect Allied’s due process rights under the Fourteenth Amendment. Therefore, |10we find the trial court erred in upholding the validity of the November 12, 2003 tax sale to Naquin and divesting Allied of its ownership in the property.
Accordingly, for the above reasons, we reverse the judgment of the trial court. We declare the November 12, 2003 tax sale to Clyde Naquin to be an absolute nullity. We annul the tax sale subject to La. Const. Art. VII, § 25(C) and its included provision that “[n]o judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser,” Clyde Naquin. See Lewis, 2005-1192, p. 22, 925 So.2d at 1184 n. 9.
REVERSED

. The parties stipulated that as of the date of trial, December 13, 2011, Naquin had paid a total of $27,847.18 in property taxes.

. La. R.S. 47:2228 provided that once three (3) years had elapsed from the date of recor-dation of the tax sale the purchaser of property at a tax sale could file suit to quiet tax title. The statute was repealed by Acts 2008, No. 819, § 2, effective January 1, 2009, and replaced with current La. R.S. 47:2266.

. On the date of the tax sale, the provisions of La. Const. Art. VII, § 25, pertinent to this matter, provided:
(A) Tax Sales. (1) There shall be no forfeiture of property for nonpayment of taxes. However, at the expiration of the year in which the taxes are due, the collector without suit, and after giving notice to the delinquent in the manner provided by law shall advertise for sale the property oil which the taxes are due. The advertisement shall be published in the official journal, as provided by law for sheriff's sales, in the manner provided for judicial sales. On the day of sale, the collector shall sell the portion of the property which the debtor points out. If the debtor does not point out sufficient property, the collector shall sell immediately the least quantity of property which any bidder will buy for the amount of the taxes, interest, and costs. The sale shall be without appraisement. A tax deed by a tax collector shall be prima facie evidence that a valid sale was made.
⅝ ⅜ ⅜ ⅝ ⅝
(B) Redemption. (1) The property sold shall be redeemable for three years after the date of recordation of the tax sale, by paying the price given, including costs, five *527 percent penalty thereon, and interest at the rate of one percent per month until redemption.
⅛ ⅝ ⅜ ⅜ ⅛ ⅛
(C) Annulment. No sale of property for taxes shall be set aside for any cause, except on proof of payment of the taxes prior to the date of the sale, unless the proceeding to annul is instituted within six months after service of notice of sale. A notice of sale shall not be served until the final day for redemption has ended. It must be served within five years after the date of the recordation of the tax deed if no notice is given. The fact that taxes were paid on a part of the property sold prior to the sale thereof, or that a part of the property was not subject to taxation, shall not be cause for annulling the sale of any part thereof on which the taxes for which it was sold were due and unpaid. No judgment annulling a tax sale shall have effect until the price and all taxes and costs are paid, and until ten percent per annum interest on the amount of the price and taxes paid from date of respective payments are paid to the purchaser; however, this shall not apply to sales annulled because the taxes were paid prior to the date of sale.
(D) Quieting Tax Title. The manner of notice and form of proceeding to quiet tax titles shall be provided by law.

. The Indiana statute at issue, Ind.Code § 6-1.1-24-1 et seq., required the county auditor to post notice in the county courthouse of the sale of real property for nonpayment of property taxes and to publish notice once each week for three consecutive weeks.' It also required the county to give notice by certified mail to the property owner at the owner's last known address, § 6-1.1-24-1, but at the time in question the statute did not provide for notice by mail or personal service to the mortgagee(s) of the property.

. La. R.S. 47:2180 was repealed by Acts 2008, No. 819, § 2, effective January 1, 2009. The substance of former La. R.S. 47:2180, 2180.1 and 2181 was consolidated and reproduced, with certain modifications, and renumbered as current La. R.S. 47:2153 by Acts 2008, No. 819, § 1. At the time of the tax sale in question, La. R.S. 47:2180 provided:
Immovable Property, Notice of Delinquency
A. (l)(a) On the second day of January each year, or as soon thereafter as possible, *529 the tax collector shall address to each taxpayer who has not paid all the taxes which have been assessed to him on immovable property or to the record owner of the property for which the taxes are delinquent, or to the actual owner in the event the record owner is deceased, written or printed notice in the manner provided for herein that his taxes on immovable property must be paid within twenty days after the service or mailing of the notice, or that the property will be sold according to law.
(b) On the second day of January of each year, or as soon thereafter as possible, in each year following the year in which the original notice of delinquency is made pursuant to Subparagraph (a) herein, the tax collector shall address to each taxpayer who has not paid the taxes which have been assessed to him on immovable property a written notice in the manner provided herein. The notice shall specify the property upon which the taxes are delinquent, the amount of taxes due, and the manner in which the property may be redeemed. The notice shall be made each year until the property, is no longer redeemable as provided in Article VII. Section 25(B) of the Constitution of Louisiana. The cost of mailing the notice shall be considered cost for purposes of redemption.
(2) Any taxpayer may designate one additional person to be notified in the event of a delinquency. Such designated person shall receive the same notification as the delinquent taxpayer and such notice shall be made in the manner provided herein.
B.The tax collector shall send to each taxpayer by certified mail, with return receipt requested, the notice prescribed herein, provided that in cities containing a population of over fifty thousand persons, the tax collector may either send this notice by certified mail or may make personal or domiciliary service on the taxpayer. In the event the certified notice is returned as being undeliverable by the post office, the tax collector may comply with Article 7 Section 25 of the Constitution of Louisiana and the provisions of this Section by advertising the tax debtor's property in the advertising required for unknown owners in Subsection C of this Section. After the tax collector shall have completed the service by the notices herein required, either by mail or by personal domiciliary service, he shall make out a proces verbal stating therein the names of delinquents so notified, their post office addresses, a brief description of the property, the amount of taxes due and how the service of notice was made. Such proces verbal shall be signed officially by him in the presence of two witnesses and filed, in the parishes other than the parish of Orleans, in the office of the clerk of court for recording and preservation. In the parish of Orleans, such proces verbal shall be filed in the office of the state tax collector for the city of New Orleans and preserved for record. This proces verbal shall be received by the courts as evidence. The tax collector shall be entitled to collect actual mailing costs of each certified, with return receipt, notice, and mileage shall be charged for service of this notice. A like charge will be made if the property is adjudicated to the state or any subdivision thereof.
C. The tax collector shall publish one general notice substantially in the form set forth herein, addressed to all known owners of assessed immovable property situated in his parish, and to non-resident owners of such property whose post office address is unknown, in which he shall describe the property as described in the tax roll. Such notice shall be published once a week for two weeks in a newspaper published in his parish, or if there be none published in the parish, then such notice shall be given in the manner provided by law for judicial sales. He shall pay for the publication, and shall be entitled to collect as costs therefor the pro rata share of the publication costs from each unknown owner or from the property assessed to him. The collector shall certify on his tax rolls that he has published the notices, and the certificate on either roll shall make full proof thereof until disproved in a judicial proceeding.
D. Within thirty days after the tax sale, or as soon thereafter as possible, the tax collector shall research the records of the clerk of court for transfers on all property sold. Within thirty days of finding a transfer of any property sold at a tax sale, the tax collector shall attempt to serve the new owner with a certified notice that the property was sold and include in the notice the amount necessary to redeem the property. This notice shall also advise the owner that the property may be redeemed at any time within three years from the date recordation of the sale. This shall serve as the required notice to the record owner in Subsection A of this section.

. A certified copy of Allied's tax deed from the November 18, 2002 tax sale is attached as Exhibit A to Allied’s Petition to Quiet Tax Title and Annul Tax Sale. Tax sales are presumed valid, and a tax deed shall be prima facie evidence of the validity of the tax sale. La. Const. Art. VII, § 25(A).